## FRETWELL v. GILLETTE SAFETY RAZOR CO.

### No. 1009.

District Court, D. Delaware.
May 10, 1934.

William G. Mahaffy, of Wilmington, Del., Herbert J. Jacobi, of Washington, D. C., and Israel H. Perskin, of Brooklyn, N. Y., for plaintiff.

E. Ennalls Berl (of Ward & Gray), of Wilmington, Del., and George P. Dike (of Macleod, Calver, Copeland & Dike), of Boston, Mass., for defendant.

NIELDS, District Judge.

This is the usual bill in equity charging Gillette Safety Razor Company with infringement of United States letters patent No. 1,467,930, granted to Julian W. Fretwell, the plaintiff, September 11, 1923. The invention is stated by the patentee to be for "new and useful Improvements in Locked Razors." The defense is noninfringement.

What did Fretwell contribute to the art? He testified to observing that inmates of jails and asylums were only shaved weekly and were not permitted the free use of razors. He conceived the idea of taking a Gillette type safety razor and fitting it with means controlled by a key for locking the blade into shaving or nonshaving position. To provide for the nonshaving position, a V-shaped groove was employed just back of the rounded edges of the guard teeth into which the cutting edge of the blade was disposed. When in that position the razor blade could not be used either for shaving or for any other purpose. Should any one attempt to remove the blade from the holder when in locked position by inserting a pointed instrument in the groove below the cutting edges or picking at it, he would, to use the language of the patentee, "break the blade as literally to pieces as the manufacturer desired to make it." Plaintiff also had in mind a domestic use for his invention. If the master of the house did not desire a servant, child, or other person to use the razor, it could be locked into nonshaving position and the key removed.

Having conceived the locked razor, plaintiff also provided for a special blade for use in a safety razor. It is with this blade that we are concerned.

In his specification, Fretwell says: "My improvements are designed more particularly for embodiment in a certain well known type of safety razor." Fretwell here refers to the well-known Gillette type razor with the three-hole transversely flexible blade. As objects of his invention he states:

"One object of my said invention is the provision of a locked razor—i. e., a razor so constructed that its blade is locked against removal and against surreptitious use by servants. * * *

"Another object of the invention is the provision in a razor characterized as set forth, of a flexible blade provided with a multiplicity of closely arranged apertures adjacent to each of its edges so that in the event of an insane person seeking to pick at the blade with a view to removing the same, the blade will be broken into fragments and rendered unfit for use."

"Manifestly a razor characterized as indicated may be placed in the hands of an insane man for legitimate use," says the patentee, "without liability of the patient being able to remove the blade and use the same in a suicidal effort. Also, a razor of the kind stated may be left in his room by the owner without possibility of any person using the razor, the locking means being preferably controlled by a key to be carried by the owner, and manipulation of such key being absolutely necessary in order to dispose the blade for use."

The patent contains four claims. The first three are directed to a locked razor—the combination of holder and blade. Claim 4, the only one in suit, is for a blade only. It reads:

"4. As a new article of manufacture, a transversely flexible razor blade having a sharpened edge and also having adjacent to said edge a multiplicity of minute, closely arranged apertures."

For over thirty years defendant has manufactured the Gillette razor and blade in Boston. It has distributing agencies throughout the world. The razor consists of a holder and a transversely flexible blade. Until 1921 the standard Gillette blade had three holes of approximately the same size spaced along the longitudinal axis of the blade. The center hole engaged a threaded stud which secured the clamping holder in place. The two end holes each engaged positioning studs to properly position the blade for shaving. Between 1921 and 1930 two new models of Gillette razors were manufactured. Each of these used the standard three-hole blade. Since 1930 the new Gillette model has been manufactured. This razor has a central longitudinal bar for positioning the blade and calls for a long slot in the blade. In that year there was a merger between defendant and Auto-Strop Safety Razor Company, the manufacturer of a safety razor called "Probak." That razor had positioning means of various sizes and shapes. The established practice of defendant was that every blade put out by it should fit every razor put out. After the merger, defendant modified the slots and other cut-out portions of its blades to fit not only all preceding Gillette razors but also all preceding Probak razors. Some slots or cut-out portions were also added to provide a blade to fit a razor which defendant expected to manufacture, and the added slots would be necessary to engage the new positioning means.

Plaintiff contends that all of defendant's blades other than the original three-hole Gillette blade upon which plaintiff's improvement is based are infringements of his patent.

Plaintiff seeks a broad construction of his claim because he realizes such a construction is essential to his case. He invokes the language of the specification to justify that construction. The terms of the claim, however, measure a patentee's right to relief. The specification may be referred to to limit a claim. It can never be available to expand it. When a claim is explicit, the courts cannot alter or enlarge it. The patentee is bound by it and cannot claim anything beyond it.

The claim in suit calls for "a multiplicity of minute, closely arranged apertures * * * adjacent to" the sharpened edges of the blade. It is expressed in plain and unambiguous language. It contains four definitely limiting words or expressions: (a) "A multiplicity"; (b) "minute"; (c) "closely arranged"; and (d) "adjacent" the cutting edge. Plaintiff's contention that the claim should be given a broad interpretation and liberally construed is based upon a single word in the specification. Referring to figure 4, the patentee says: "Figure 4 is a plan view of a blade of flexible character, weakened in accordance with my invention for the purpose indicated."

Upon the word "weakened" in the specification plaintiff builds his case. He argues that Fretwell contributed to the art a blade adaptable for use in a Gillette razor having a new function. The new function which Fretwell claims he contributed was superflexibility in the blade. He contends that such a superflexible blade possessed an additional feature of safety because it would

820

readily break under certain circumstances. Plaintiff entirely ignores the statement in the specification that the weakening of the blade was "for the purpose indicated." That purpose was not to increase flexibility but to increase fragility. Nowhere in the specification or claim does the patentee mention or describe a superflexible blade. There is no suggestion that the multiplicity of holes were to increase flexibility. Everything about superflexibility introduced into this case is foreign to the invention. What Fretwell was seeking was a blade that was readily breakable at the edges of the blade when picked at. To accomplish his purpose, he put in his blade a number of small holes adjacent to the cutting edge so that the blade would break if picked at or attempted to be removed from the holder. If the patentee intended to include superflexibility as a function of his new blade, he failed to describe it in his specification or to include it in his claim.

That Fretwell did not contemplate superflexibility or a weakened blade is confirmed by the file history. Claim 3 of the application as originally filed called for a blade "provided adjacent to one edge with a multiplicity of small apertures, whereby the blade is weakened." This claim was rejected. The rejection was acquiesced in and the claim canceled without comment by the applicant. While the rejection was on the ground of aggregation, the idea of a weakened blade was not pressed, and it did not again appear in any suggested claim. Plaintiff having specified the number, size, relationship, and function of elements of his claim, he cannot now be permitted to depart from the plain meaning of the language used and claim for such language a broad construction.

■■ There is another complete answer to plaintiff's contention that the claim should be liberally construed. The patent in suit is a paper patent. Though it issued in 1923, the blade has never been manufactured or sold. It has made no impression in the art. Meanwhile defendant has manufactured and sold many millions of the alleged infringing blades. Under these circumstances, the claim is not entitled to a broad construction. Elvin Mechnical Stoker Co. v. Locomotive Stoker Co. (C. C. A. 3) 286 F. 309, 311; Deering v. Winona Harvester Works, 155 U. S. 286, 295, 15 S. Ct. 118, 39 L. Ed. 153. The doctrine of equivalents has no application.

Does defendant infringe? This question can be better answered by illustrating the different blades.

Three-hole
Gillette blade

Blade of
Patent

Alleged infringing blades

The purpose and function of the apertures of the claim is to produce a blade readily breakable into fragments in the event of a person picking at the edges of the blade in an attempt to remove it from the holder. Assuming that the cut-out portions of defendant's blades may be considered "apertures," they are not the apertures of the claim of the patent. The cut-out portions of defendant's blades, with the exception of a central opening, which serves no useful purpose, are solely positioning means of various sizes and shapes inserted to enable the blades to fit all Gillette and Probak razors that had been or were expected to be manufactured. The cut-out portions of defendant's blades are not "adjacent to" the sharpened edges of the blade, but are along the longitudinal axis of the blade and extend equally to each side thereof. While cutting out a portion of metal from a blade necessarily weakens it in some respects, the cut-out portions of defendant's blade do not weaken and are not for the purpose of weakening defendant's blades so as to cause them to break into fragments as is the intent and function of the minute apertures of the blade of the claim of the patent. The cut-out corners of defendant's blades are to lessen and not to enhance blade breakage. It is obvious that none of the cut-out portions of defendant's blades perform the function or achieve the results of the two rows of minute holes in the blade of the claim adjacent each cutting edge, nor do the cut-out portions allow defendant's blade to be flexed beyond a normal amount or into a groove in the razor holder.

Again, "a multiplicity of minute, closely arranged apertures," an important element of the claim, are not found in defendant's

blades. One of the objects of the patentee was to produce a weakened blade readily breakable along the cutting edge. Such breakage as there has been in defendant's blades has always been considered prejudicial, and defendant has spent much time and effort to overcome blade breakage.

The plaintiff took the standard three-hole Gillette blade and placed therein a double row of small holes adjacent the cutting edges for the purpose of making it fragile and breakable along the cutting edges should an attempt be made to remove the blade from the holder when in locked position. The defendant, on the other hand, changed the slots or cut-out portions of its three-hole blade so that the blade would be adapted to fit the different models of holders with different positioning means. At all times defendant was seeking means and methods of manufacture to prevent breakage, not enhance it.

Defendant's blades do not infringe.

It is unnecessary to refer to the prior art. It is sufficient to state that, if claim 4 of the Fretwell patent were construed broadly enough to cover defendant's blades, it would be invalid in view of the prior art.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with Equity Rule 70½ (28 USCA § 723).

The bill of complaint must be dismissed.