**AMERICAN LAKES PAPER CO. v. NEKOOSA-EDWARDS PAPER CO. et al.**

**No. 5454.**

Circuit Court of Appeals, Seventh Circuit.
May 20, 1936.

Cyril A. Soans and William E. Anderson, both of Chicago, Ill., for appellant.

Merrell E. Clark and John Vaughan Groner, both of New York City, and Charles W. Hills, Jr., of Chicago, Ill., for appellees.

Before SPARKS and ALSCHULER, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

Appellant sued the Nekoosa-Edwards Paper Company for infringement of claims 1 to 12, inclusive, of Seaborne Letters Patent, No. 1,517,018. The Nekoosa Company was the customer of appellee B. F. Goodrich Rubber Company. That company intervened and assumed the defense, which was non-infringement, and invalidity on account of lack of invention. The District Court sustained both defenses and dismissed the bill, and from that decree this appeal is prosecuted.

The patent was issued November 25, 1924, upon an application filed November 24, 1923, and all rights thereunder were assigned to American Lakes Paper Company. The patent is for a "Paper Making Machine," but the alleged invention is confined to watermarking rolls for such machines. The specified object was "to provide improved means whereby a web of paper as it passes through a paper making machine may be impressed with designs or marks commonly termed 'watermarks' which serve to identify or give distinctive character to the paper."

As illustrative of the disclosure, Seaborne in his specification, and appellant in its brief, set forth with some particularity the prior state of the art. The impression of "watermarks" for two purposes is emphasized: (1) To identify bond or other writing paper in such a manner and at such stage of its manufacture that the "identification marks" will not be so distinct as to interfere with writing or typing thereon, (2) to give distinctive character to the paper, or "decorative marking," commonly used in wrapping paper, in such manner and at such stage in its manufacture, that the design is impressed in the surface of the finished paper and is clearly visible at all times. In the prior art the marking rolls for those purposes commonly consisted of two distinct types, which, together with their alleged disadvantages, the patentee and appellant set forth.

The roll which in the prior art was commonly used for "decorative marking" is typified throughout the record and argument by United States Patent No. 733,709, issued to Farwell, July 14, 1903. Such roll was ordinarily used in conjunction with the drying cylinder of the machine and was provided with a metal design-bearing surface which was "crowned" to compensate for the springing of the roll, and was wrapped with muslin through which the design was impressed upon the paper. As a disadvantage of this type, appellant notes the expense and delay occasioned by the frequency with which the muslin wrappings had to be replaced.

The other type of marking roll formerly used in machines to which the alleged invention relates is typified in the record and argument by United States Reissue Patent No. 12,218, to Behrend as of May 10, 1904. In his specification, Seaborne said that this type "comprises one or more rolls upon the peripheries of which are secured marking types or plates of resilient material * * * made as narrow, endless bands of soft rubber, the types or impression surfaces upon the bands consists of harder rubber vulcanized to the soft rubber bands which afford a cushion for the impression types or surfaces. In practice this * * * marking roll is found objectionable for a variety of reasons, the most serious one of which is that it is impossible to vulcanize the soft rubber on to the surface of the metal roll or otherwise rigidly and satisfactorily attach it thereto, so that the soft rubber base or cushion will not slip or creep slightly under the strain or force necessary to effect the impression to the paper web. Such creeping or slipping of the soft rubber that forms a cushion for the harder rubber type or impression surfaces speedily destroys the accuracy of the impressions upon the paper web, and also hastens the wearing out of the marking types or surfaces and of the cushions carrying the same."

Another objection urged by patentee to this type was the inequality of impression upon the paper web when marking very wide webs, caused by the tendency of the long roll to spring at its center. Patentee further noted the "mechanical limitations

to the width of rubber bands that can be made and adapted for slipping over the ends of the rolls, and any inequality of pressure at different points of the roll must necessarily cause such bands to unequally slip or creep and thus destroy the uniformity of the impressions produced thereby."

Claims 4, 8 and 12 are typical of the several groups of claims and are set forth in the margin.[1]

It was claimed by Seaborne, and is now urged by appellant, that all the objections to Farwell and Behrend, and their types, as hereinbefore referred to were met and fully overcome by the patent in suit. We insert Seaborne's Figure 4:

H is a metal cyclinder which is covered with a layer of hard rubber, h, vulcanized thereon and forming preferably a continuous sleeve or tube around the surface of H. Over h and vulcanized thereto is another layer or sleeve of soft rubber, $h^1$, and over the layer of soft rubber, $h^1$, and vulcanized thereto, is an outer layer or sleeve of hard rubber, $h^2$. The soft rubber layer, $h^1$, affords a cushion for the outer layer, $h^2$, of hard rubber in or on the surface of which is to be formed the designs, type, or the like, whereby the marking or ornamenting of the paper web will be effected. Any designs which are desired to be impressed upon the surface of the paper web will be ground, formed or cut upon the outer surface of $h^2$. When it is desired to modify or soften the effect of the marking roll and to give the impressions an appearance resembling a fabric weave, the outer surface of $h^2$ may be covered with one or more layers of textile fabric, such as muslin or the like, K. This, after being wrapped around the roll, will have its ends suitably fastened to prevent it from slipping or working loose. It may be in tubular form so as to be slipped over the end of the roll and shrunk thereon. By providing the surface of H with a layer of hard rubber vulcanized thereto, all possibility of any slipping or creeping occurring between H and h is avoided, and h affords a hard rubber base to which the soft rubber layer, $h^1$, of the cover may be securely vulcanized.

The patent further describes a modification of the alleged invention in which the marking surface, instead of being an endless sleeve of hard rubber, consists of a number of spaced individual, hard rubber marking plates, each of which is backed by cushion rubber. This modification was subsequently eliminated by disclaimer, which will be discussed later. We mention it at this time in order to get a complete picture of patentee's disclosure.

A consideration of the prior art is quite convincing that the patent disclosure here must be confined to the particular means for anchoring the cushion layer to the metal core.

The location of the Seaborne roll was not new. His preferred location was adjacent the drying cylinder, as in Farwell, but he permitted a variation in location so as to permit cooperation with any other roll, as in Behrend. It was not novel to crown a very long roll in order to compensate for springing; nor to grind or cut or form the designs in or on the outer surface of $h^2$; nor to wrap the marking roll with muslin if desired, for these features were all dis-

1 "4. In a paper-making machine, the combination with a suitable cylinder or roll, of a marking roll comprising a body having thereon a cushioning layer of soft rubber and an outer sleeve of hard rubber provided with a marking surface."

"8. In a paper-making machine, the combination with a suitable cylinder or roll, of a marking roll comprising a body having thereon a continuous sleeve of hard rubber, a continuous sleeve of soft rubber vulcanized to said hard rubber sleeve and an outer continuous sleeve of hard rubber vulcanized to said soft rubber sleeve and provided with a marking surface."

"12. In a paper-making machine, the combination with a suitable cylinder or roll, of a marking roll comprising a body having thereon a plurality of cylindrical covers or sleeves of rubber united together, the outermost sleeve or cover being provided with a marking surface and being of harder rubber than the sleeve beneath it, said outermost sleeve being thickest about the central portion of the roll and gradually diminishing in thickness towards the ends of the roll."

closed by Farwell. The hard rubber design-bearing surface backed by a cushion of soft rubber was likewise disclosed by Behrend, and the most serious objection urged to Behrend by Seaborne was the impossibility of vulcanizing the soft rubber cushion to the metal core. It was the effect of this supposed impossibility which he claimed to have circumvented by his disclosure. His solution of the problem was merely the interposition between the metal roll and the soft rubber cushion of a layer of hard rubber to which both the metal surface and the soft rubber cushion could be satisfactorily secured.

The District Court, however, found that this expedient was not new but that it had been common and well-known in the rubber roll art for many decades. That conclusion seems to be amply supported by the prior patents and prior uses introduced in evidence, and we adhere to the ruling. Mayall, No. 125,595; Fukuda, No. 1,417,240; Hett, No. 662,862; Schmitz German Patent, No. 71,762. It is quite true that the rolls of these cited patents, save Schmitz, were never used for making decorated wrapping paper, but they were extensively used in closely related fields, and the rubber layers performed precisely the same functions as in the patent in suit. Schmitz disclosed a paper mill press roll converted into a watermarking roll by applying a design-bearing device of the same material as the roll or its coating, but of a particular degree of hardness. It is urged, however, that Schmitz did not contemplate using the entire outer surface of the press-roll covering as a marking surface; that the markers were to be detachably secured to the roll surface, and there was no engraved sleeve. There is no limitation, however, in Schmitz on the proportion of the marking surface to be used, and he merely suggests the expediency of an interchangeable cover. He likewise is not limited as to the manner of making the desired mark.

It is obvious that Seaborne merely secured the cushion rubber of Behrend to the metal surface by interposing a layer of hard rubber. This was not doing what theretofore had been impossible. He merely used an expedient in the art of rubber rolls which had been used continuously and extensively for many years. The evidence discloses that the Cincinnati Rubber Company did precisely what Seaborne did at a later date, and Seaborne was merely the first to consider the act as involving inventive genius. We think he did nothing more than bring together old elements, in a mechanism involving no new principle, to produce an old result. This is not invention. Altoona Public Theatres, Inc., v. American Tri-Ergon Corporation, 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005; Pennsylvania R. Co. v. Locomotive Truck Co., 110 U.S. 490, 4 S.Ct. 220, 28 L.Ed. 222; Caton Printing Co. v. Daniels Mfg. Co. (C.C.A.) 72 F.(2d) 993.

It is urged that Seaborne anticipated the conception as embodied in the Cincinnati roll. A fair construction of the testimony in this suit discloses that the Cincinnati roll was conceived in July, 1922, by one Arnold. Its construction by the Cincinnati Rubber Company was formally ordered by the New York & Pennsylvania Company on January 26, 1923, and it was completed and shipped to the last named company on June 30, 1923. The Seaborne roll was manufactured by Stowe-Woodward, Inc. It was ordered on February 23, 1923, and completed and shipped to the Seaborne Company on August 29, 1923. Arnold acted as salesman for both manufacturing companies. Seaborne and Arnold were acquaintances and had discussed watermarking rolls as early as July, 1922, at which time Arnold told Seaborne that he, Arnold, felt that he could build a roll with a glorified Behrend marking band type, that is to say, the Cincinnati roll. Seaborne testified that in that same conversation, "Mr. Arnold told me it was for a South American republic, he did not care to tell me where he was sending it, but it turned out to be, I understand, for Cuban stamps."

Appellant, however, seeks to overcome Arnold as an anticipation because Arnold failed to apply for a patent and made no opposition to Seaborne's application. This contention cannot be sustained. Arnold never regarded the Cincinnati roll as anything but a "glorified Behrend marker," and quite properly considered it as not disclosing inventive genius. His business was that of roll-salesman. Up to the time of his testimony, he, through his principal, Stowe-Woodward, Inc., had made all of Seaborne's marking rolls. His profits came through his sales, and the fact that he did not oppose his customer's application for the patent can not be considered sufficient to overcome the admitted anticipatory facts. This is not a contest between appellant and Arnold, but is a contest between appellant on the one side and appellees and the pub-

lic on the other. Under these circumstances, Arnold was not required to oppose his customer's application for the patent, and the fact that he did not do so will not limit the rights of appellees or the public.

■ It is further contended by appellant that the presumption of validity shifts the burden upon appellees to prove that Seaborne was not the first inventor. This rule we recognize, but it is not to be applied where, as here, anticipation has been proved. Consolidated Ry. Electric Lighting & Equipment Co. v. Adams & Westlake Co. (C.C.A.) 161 F. 343; Moline Plow Co. v. Rock Island Plow Co. (C.C.A.) 212 F. 727. A perusal of all the evidence convinces us that the District Court was right in holding that Seaborne's conception did not antedate Arnold's.

It is further contended by appellant that the effect of the Cincinnati roll as an anticipation is overcome by two disclaimers filed by appellant as assignee of Seaborne. The first was filed on July 24, 1933, before the trial and after the depositions establishing that defense had been taken. The original specifications provided that the designs on the outermost cover, $h^2$, should be ground, formed or cut. None of the claims said anything about how the design should be imparted to the outer surface. In the Cincinnati roll the design was formed by molding. This disclaimer seeks to distinguish the patent from the Cincinnati roll by eliminating the word "formed" from the specification and by converting the claimed invention from the one originally covered to one which consisted in applying a design to a marking surface by grinding or cutting as distinguished from forming. The District Court found that it had been common practice in the rubber roll art for many years, to produce surface designs either by grinding or cutting, or by molding, and that those methods had long been well recognized mechanical equivalents. The evidence fully supports this finding. The distinction sought to be raised by this disclaimer is not a sufficient basis for invention.

The second disclaimer was filed after the District Court's decision upholding the Cincinnati defense. The Cincinnati roll was made up of a number of strips or sleeves vulcanized together at their edges, instead of being made of a single continuous piece as called for in claim 8. It will be noted, as hereinbefore stated, that Seaborne had referred to a permissible modification of his alleged invention, in that instead of the outer or marking roll being a continuous sleeve, it might be a series of marking plates, illustrated by certain figures referred to in the second disclaimer. The purpose of this disclaimer was to eliminate these figures and all parts of the specification relating to them; to eliminate from the scope of each and all of the claims any marking roll whose engraved hard rubber cover was not continuous; and to limit the scope of each and all of the claims to a marking roll with a single one-piece outer hard rubber sleeve in which the design was engraved. It is further to be noted that the original patent stated that the designs should be "ground, formed, or cut;" the first disclaimer eliminated the word "formed;" and the second disclaimer eliminates the words "ground" and "cut" and inserts the word "engraved," which is nowhere found in the original patent.

It is clear that the Cincinnati roll, although made up of several sections, constitutes a continuous outer sleeve or cover. It is urged by appellant that its outer surface without seams is better for "all over" designs such as spider webs and the like, but nowhere in the patent is an "all over" design mentioned. Even so, it would hardly amount to invention to eliminate a vulcanized joint.

■ We are convinced that the disclaimers purport to change the character of the invention for which the patent was originally granted, and for that reason, among others, we think the claims are invalid. The filing of the disclaimers was an effort to avoid the clear anticipation of the Cincinnati roll, and it has resulted in a defeat of the claims of the patent under the rulings in the following cases: Altoona Public Theatres, Inc., v. American Tri-Ergon Corporation, supra; Hailes v. Albany Stove Co., 123 U.S. 582, 8 S.Ct. 262, 31 L.Ed. 284; Fruehauf Trailer Co. v. Highway Trailer Co. (D.C.) 54 F.(2d) 691, affirmed (C.C.A.) 67 F.(2d) 558; General Motors Corporation v. Rubsam Corporation (C.C.A.) 65 F.(2d) 217; Corn Products Refining Co. v. Penick & Ford (C.C.A.) 63 F.(2d) 26; Albany Steam Trap Co. v. Worthington (C.C.A.) 79 F. 966. The District Court's ruling was right in holding the claims invalid for anticipation and lack of invention.

It is unnecessary to dwell at length on the question of infringement. Appellees' roll omits the interposition of the hard rubber layer for anchoring the cushion of soft rubber to the metal core, the thing

above all, *upon* which appellant relied to give life to his patent. He said it was impossible to vulcanize soft rubber to the surface of a metal roll or otherwise rigidly and satisfactorily attach it thereto. But appellees have accomplished that which Seaborne said was impossible, and they have done it by the use of a patented cement called "vulca-lock." Clearly, there was no infringement.

Decree affirmed.