**B. F. GOODRICH CO. et al. v. AMERICAN LAKES PAPER CO.**

No. 1257.

District Court, D. Delaware.

May 10, 1938.

Merrell E. Clark and John Vaughan Groner (of Fish, Richardson & Neave), both of New York City, and William G. Mahaffy, of Wilmington, Del., for plaintiff.

Cyril A. Soans (of Fisher, Clapp, Soans & Pond), of Chicago, Ill., and Caleb S. Layton (of Richards, Layton & Finger), of Wilmington, Del., for defendant.

NIELDS, District Judge.

Two motions are before the court. (1) Plaintiffs' motion for a preliminary injunction, and (2) defendant's motion to dismiss the bill of complaint. Both motions are preliminary and incident to a suit in equity based upon unfair competition and the Declaratory Judgment Statute, Jud.Code § 274d, 28 U.S.C.A. § 400, involving patent rights.

In the equity suit The B. F. Goodrich Company (herein called Goodrich) and Nekoosa-Edwards Paper Company (herein called Nekoosa) are plaintiffs and American Lakes Paper Company (herein called American Lakes) is defendant.

Goodrich and Nekoosa move to enjoin American Lakes from harassing or threatening Nekoosa or any other customer of Goodrich because of alleged infringement of Seaborne reissue patent No. 20,606. This motion is based upon the outcome of an infringement suit brought in the United States District Court for the Western District of Wisconsin by American Lakes against Nekoosa and B. F. Goodrich Rubber Company (herein called Rubber Company), the predecessor in interest and privy of Goodrich. In the final decree the Wisconsin court held claims 1 to 12 of Seaborne patent No. 1,517,018 as limited by two disclaimers to be invalid and not infringed. The bill here filed prays the court to find the Seaborne reissue patent indistinguishable from the claims found invalid by the Wisconsin court.

American Lakes moves to dismiss the bill of complaint as to Goodrich on the alleged ground that the bill fails to state any controversy or cause of action against Goodrich. American Lakes admits that the bill states a controversy or cause of action under the Declaratory Judgment Statute against Nekoosa.

## Statement of Facts.

In 1931 American Lakes brought an infringement suit against Nekoosa in the Western District of Wisconsin alleging infringement of Seaborne patent No. 1,517,018 for a Paper Making Machine. The alleged invention was confined to watermarking rolls for such machines. The rolls were made on a metal core to which a number of layers of rubber was vulcanized. The upper layer upon which the designs were impressed was hard rubber superimposed on a soft rubber cushion layer.

Nekoosa used a rubber covered roll made by Goodrich and sold by Rubber Company. This roll was the alleged infringing structure. Rubber Company was a Michigan corporation and a subsidiary of Goodrich which owned all its stock and controlled all its actions. Rubber Company intervened in the Wisconsin suit and controlled the defense.

Depositions in the Wisconsin suit taken on behalf of defendants developed a prior use anticipating the Seaborne patent in suit. The marking roll in the prior use bore a molded marking surface. Originally the Seaborne patent stated that the marking surface might be "ground, formed [i. e. molded] or cut". Because of this proof of prior use American Lakes, on July 24, 1933, filed a disclaimer which eliminated from the patent any claim to watermarking rolls "with a molded marking surface" and limited the claims to combinations having a marking roll "wherein the marking pattern or design is ground or cut."

In January, 1934 there was a hearing on the issues of validity and infringement in the Wisconsin suit. In August, 1934 the District Court there held that the Seaborne patent was anticipated by the prior use and did not disclose invention over two other rolls of the prior art. The court also held there was no infringement.

September 22, 1934 American Lakes filed a second disclaimer. In October, 1934 it moved to reopen the case because of this second disclaimer. The motion was heard and denied. The second disclaimer eliminated from the Seaborne patent any combination in which the engraved hard rubber covering of the marking roll was not "continuous", and limited the claims of the patent "to a paper making machine having a marking roll with a single one piece outer hard rubber sleeve in which the design is engraved".

October 16, 1934 a final decree was entered adjudging "that claims 1 to 12, inclusive, of the Seaborne patent No. 1,517,018 are invalid and void".

In January, 1935 American Lakes filed its appeal to the Court of Appeals for the Seventh Circuit, assigning error as to the holdings of invalidity and noninfringement and as to the denial of the motion to reopen in view of the second disclaimer.

In May, 1936 the Court of Appeals for the Seventh Circuit, considering both disclaimers, handed down its decision, American Lakes Paper Co. v. Nekoosa-Edwards Paper Co., 83 F.2d 847, affirming the decision of the District Court both as to invalidity and as to non-infringement.

June 25, 1936, American Lakes filed its application for reissue, which issued as Reissue patent No. 20,606 on December 28, 1937.

In June, 1934 Goodrich caused to be transferred to it all the assets of its sub-

sidiary, the Rubber Company. In December, 1934 the subsidiary was dissolved.

### Preliminary Findings.

■ The final decision of a court of competent jurisdiction is res judicata in any subsequent action where the parties are the same and where the subject matter is the same. Does the doctrine of res judicata apply here? Are the parties the same? Is the reissue patent No. 20,606 the same as patent No. 1,517,018? These questions must be answered before the law governing the case can be applied.

■ Nekoosa, one of the parties here, was a party to the Wisconsin suit and is entitled to enjoy all the benefits growing out of the Wisconsin decree. Goodrich, one of the parties here, was not a party to the Wisconsin suit but is the privy of Rubber Company who was a party. "* * * privity denotes mutual or successive relationship to the same right of property". Bigelow v. Old Dominion Copper Co., 225 U.S. 111, 129, 32 S.Ct. 641, 643, 56 L.Ed. 1009, Ann.Cas.1913E, 875. There is both a "mutual" and a "successive" relationship between Goodrich and Rubber Company. The capital stock of Rubber Company was wholly owned and its actions entirely controlled by Goodrich. It was the Goodrich sales department.

"There can be no doubt from the record before us that the Elyria Company owned all of the capital stock of the Hart Company, that the latter company was a mere sales agent of the former, that Wood was the salaried manager of the latter, that both the Hart Company and Wood were agents, subject to the control of the Elyria Company, and that in selling the tie plates and as defendants in the litigation they acted wholly under the authority and in the interest of their principal. Identity of interest could not be clearer or closer than it was between the defendants in the two cases,—they represented precisely the same, single interest, and the Hart Company and Wood, as agents of the Elyria Company, were obviously and necessarily privies to the judgment rendered in its favor in the circuit court of appeals for the sixth circuit." Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148.

Privity between Goodrich and its subsidiary existed and there can be no question as to the right of Goodrich to maintain this suit. It follows that the parties here are the same as the parties in the earlier litigation.

■ To further apply the doctrine of res judicata in the instant case, the decisions in the Wisconsin case must cover the reissue patent No. 20,606. In other words, the reissue patent must be shown to be the same as Seaborne patent No. 1,517,018.

The decisions of the District Court and of the Court of Appeals in the Wisconsin case did not turn upon the language of the claims of Seaborne patent No. 1,517,018 but upon the fact that what Seaborne disclosed did not amount to invention. That being so the claims were necessarily held invalid.

Both courts considered the question of whether the substitution of the Seaborne marking roll for the Farwell roll amounted to invention. Both of them held that it did not. The District Court found:

"13. It was old and well known in the art long before Seaborne's alleged invention to use for watermarking the socalled Farwell roll, which consisted of a roll having a design-bearing surface of sheet metal secured thereto, this surface being wrapped with muslin.

"14. The roll of the Seaborne patent is an exact duplicate of the old Farwell roll except that Seaborne has substituted Behrend's cushioned hard rubber marking surface for Farwell's muslin wrapped metal marking surface. The anchorage to the metal core follows conventional practice in each case.

"15. This difference between the Seaborne and Farwell rolls does not constitute invention."

Similarly, the Court of Appeals pointed out the identity between the Farwell and Seaborne rolls, in respect to everything but Seaborne's rubber roll construction, saying: "The location of the Seaborne roll was not new. His preferred location was adjacent the drying cylinder, as in Farwell, but he permitted a variation in location so as to permit cooperation with any other roll, as in Behrend. It was not novel to crown a very long roll in order to compensate for springing; nor to grind or cut or form the designs in or on the outer surface of $h^2$; nor to wrap the marking roll with muslin if desired, for these features were all disclosed by Farwell." American Lakes Paper Co. v. Nekoosa-Edwards Paper Co., 7 Cir., 83 F.2d 847, 849.

The Court then referred to other prior art showing Seaborne's rubber roll construction and concluded: "We think he [Seaborne] did nothing more than bring together old elements, in a mechanism involving no new principle, to produce an old result. This is not invention". In reaching this conclusion the Court considered Seaborne's disclaimers which attempted to distinguish from the prior roll structures by specifying that the design was "ground" or "cut", or "engraved", in the outer surface, rather than being "formed", or molded in it, and the outer surface consisted of a "single", "one-piece" and "continuous" outer sleeve. It held that these asserted distinctions did not involve invention.

Both Wisconsin courts considered what Seaborne had done and whether that amounted to invention. They did not consider whether the language of the claims defined invention. Having found that Seaborne made no invention, they held the claims invalid. Under these circumstances the prior holding of invalidity is res judicata as to the reissue patent as well as to the original patent irrespective of the particular wording of the reissue claims. The disclosure of the reissue patent goes no further than the disclosure of the original patent. If it did go further, the reissue patent would be invalid for that reason alone.

However, the reissue claims do not differ in any material respect from the original claims as modified by the disclaimers. This may be demonstrated by a comparison of illustrative claims set opposite one another in parallel columns. Thus, claim 1 of Seaborne reissue No. 20,606 may be compared with claim 11 of Seaborne original No. 1,517,018 as limited by both disclaimers. From the comparison, it is clear that the two are identical in all material respects. Therefore the decision in the prior Wisconsin case holding claims of the original patent invalid is res judicata between the present parties with respect to the claims of the reissue patent.

### Law.

■ The court finds the parties in this suit the same as the parties in the prior Wisconsin suit and that the patents in both suits are the same. Practical effect is given the doctrine of res judicata by allowing a manufacturer who has prevailed in an infringement suit to protect the subject matter thereof in the hands of his customers. Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065. The court there said (page 613):

"Leaving entirely out of view any rights which Kessler's customers have or may have, it is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, be let alone by Eldred, and it is Eldred's duty to let them alone. The judgment in the previous case fails of the full effect which the law attaches to it if this is not so. If rights between litigants are once established by the final judgment of a court of competent jurisdiction those rights must be recognized in every way, and wherever the judgment is entitled to respect, by those who are bound by it. Having, then, by virtue of the judgment, the right to sell his wares freely without hindrance from Eldred, must Kessler stand by and see that right violated, and then bring an action at law for the resulting damage, or may he prevent the infliction of the unlawful injury by proceedings in personam in equity? If Eldred succeeds in his suit against one of Kessler's customers, he will naturally bring suits against others. He may bring suits against others, whether he succeeds in one suit or not. There may be, and there is likely to be, a multiplicity of suits. It is certain that such suits, if unsuccessful, would, at the same time, tend to diminish Kessler's sales, and to impose upon him the expense of defending many suits in order to maintain the right which, by a judgment, has already been declared to exist. If the suits are successful the result will be practically to destroy Kessler's judgment right. Moreover though the impairment or destruction of Kessler's right would certainly follow from the course of conduct which Eldred has begun, it would be difficult to prove, in an action at law, the extent of the damage inflicted. An action at law would be entirely inadequate to protect fully Kessler's unquestioned right, and, under these circumstances, though there may be no exact precedent, we think that the jurisdiction in equity exists."

The doctrine of Kessler v. Eldred, supra, applies where the subsequent suit is based upon a reissue patent and it can be shown that the claims of the reissue are patentably indistinguishable from the claims involved in the earlier litigation. This was stated by the Court of Appeals for the First Circuit in its decisions in Ran-

court v. Panco Rubber Co., 46 F.2d .625, and 67 F.2d 790.

In the first Rancourt decision plaintiff had sued on a patent which had been held invalid. The plaintiff thereupon had the patent reissued and brought a second suit against the same defendant. The District Court, without comparing the claims of the original and of the reissue patents, dismissed this second suit on the ground that the matter was res judicata. The Court of Appeals reversed the District Court holding that it should determine whether or not there was identity between the claims in issue in the earlier suit and those in the later one, stating (page 627): "The court should have proceeded to consider the case on its merits. Had it done so and found that the machine called for in the specification and claims of the reissue patent was the same machine called for in the specification and claims of the original patent, and that the decree in the prior suit was based on a finding that the machine of the original patent did not involve patentable invention, then as that issue would be shown to be the same in the second suit as in the prior one, the decree in the prior suit, that the machine did not involve patentable invention, would conclude that issue in the second suit and a decree should have been entered for the defendant on the merits of the case."

The cause was returned to the District Court, 5 F.Supp. 185, and, after hearing, it was found that "the invention described in the reissue patent was the same as that described in the original patent" and that plaintiff was estopped from again raising the issue of patentability. This was affirmed, the Court of Appeals saying (67 F.2d page 791): "Since the plaintiff contends that the claims in the reissue patent are no broader than those in the original patent, and that the drawings and specifications in the reissue patent describe exactly the same machine as the original patent, we think the District Court need have gone no farther than to dismiss the bill on the ground that the plaintiff is estopped by the judgment in the former suit from prevailing in this suit. The plaintiff elected to accept the judgment of the District Court in the former suit that his machine involved no patentable invention. Clearly a reissue patent for the same machine involving the same invention cannot avail the plaintiff in a new suit."

There remains for consideration the motion of American Lakes to dismiss the bill of complaint. The motion is based upon two grounds: (1) That no cause of action based upon unfair competition is alleged, and (2) that no cause of action under the Declaratory Judgment Statute is alleged against Goodrich.

The first ground is definitely settled by Kessler v. Eldred, supra. There the court said: "Leaving entirely out of view any rights which Kessler's customers have or may have, it is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, be let alone by Eldred, and it is Eldred's duty to let them alone. * * * An action at law would be entirely inadequate to protect fully Kessler's unquestioned right, and, under these circumstances, though there may be no exact precedent, we think that the jurisdiction in equity exists."

The bill of complaint here contains two counts, the second of which is a petition under the Declaratory Judgment Statute. American Lakes contends that this count is not well founded as to the plaintiff Goodrich, upon the theory that it has not threatened Goodrich and asserts no claim against it. It has, however, threatened substantially every roll customer of Goodrich and these threats have directly reacted to the injury of Goodrich. In Demulso Corporation v. Tretolite Co., 10 Cir., 74 F.2d 805, the Court, in considering whether a party which had petitioned to intervene, had been prejudiced by the failure to act on its petition, said (page 809): "Or, since it has been held (Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L. Ed. 1065) that the interest which a manufacturer has in his established clientele is one which in a proper case may be the subject of judicial relief, an actual controversy may exist under section 274d of the Judicial Code, Act of June 14, 1934, 28 U.S.C.A. § 400."

Defendant's motion to dismiss must be denied.

Plaintiffs' motion for preliminary injunction should be granted.