## DEL TURCO v. TRAITEL MARBLE CO.

District Court, E. D. New York. April 11, 1928.

No. 3139.

1. Patents ⟨⟩327(13)—Decree in patent infringement suit between same parties with no appeal held res judicata as to identical claims.

Decree in previous suit between same parties, dismissing complaint alleging infringement of patent, with no appeal therefrom, *held*, res judicata in respect to claim of reissue patent identical with one involved in previous suit on original patent.

2. Patents ⟨⟩327(13)—Decree in suit on original patent between same parties held res judicata as to reissue having identical claims.

Where claims of reissue patent were no different in meaning than claims of original patent, decree in former suit between same parties involving original patent *held*, res judicata as to subsequent suit involving reissue patent.

3. Patents ⟨⟩327(14)—Decree in patent infringement suit held not binding on one not party or privy thereto.

Decree in patent infringement suit is not binding on party who was not a party or privy to such suit.

4. Patents ⟨⟩328—Reissue 15,535, claims 6 and 8, for terrazzo flooring and method of laying terrazzo held invalid.

Del Turco reissue patent, No. 15,535, claims 6 and 8, for terrazzo flooring and method of laying terrazzo, *held*, invalid as not constituting a true method.

5. Patents ⟨⟩328—Reissue 15,535, claims 6 and 8, for terrazzo flooring and method of laying terrazzo, held not infringed.

Del Turco reissue patent, No. 15,535, claims 6 and 8, for terrazzo flooring and method of laying terrazzo, *held*, not infringed.

6. Patents ⟨⟩232—Failure to utilize method in most advantageous form does not avoid infringement.

Failure to utilize a method of a patent in its most advantageous form does not avoid infringement.

In Equity. Suit by Louis Del Turco against the Traitel Marble Company. Decree for defendant.

Stephen H. Philbin, of New York City, for plaintiff.

R. W. Hardie, of New York City, for defendant.

CAMPBELL, District Judge. This is an action in equity, in which the plaintiff seeks relief by an injunction and damages against the defendant for an alleged infringement of reissue patent No. 15,535, to Louis Del Turco, for terrazzo flooring and method of laying terrazzo, dated February 6, 1923, on an application filed May 23, 1922.

The original patent, No. 1,368,374, was granted to Louis Del Turco, for dividing strip for cementitious floors, on February 15, 1921, on an application filed September 16, 1919.

The defendant defends on the grounds of invalidity and noninfringement of the patent, and that a former decree between the same parties is res adjudicata.

The suit is based on claims 6 and 8 of the patent in suit, which read as follows:

"6. The method of laying terrazzo flooring, comprising inserting strips in a wet underbed, allowing the latter to set, and then applying a top layer on the underbed, said strips being inserted so that their upper edges will be substantially level with and will divide the surface of the completed terrazzo flooring."

"8. The method of laying terrazzo flooring in consecutive sections, comprising inserting strips in a wet underbed, allowing the latter to set, and then applying a top layer on the underbed, said strips being inserted so that their upper edges will be substantially level with and will divide the surface of the completed terrazzo flooring."

The only difference in wording of the two claims is that in claim 8, following the words, "the method of laying terrazzo flooring," are found the words, "in consecutive sections," which are not found in claim 6.

The words, "in consecutive sections," in view of the description of the problem which the patentee thought confronted him, contained in the specification of the patent in suit, clearly appear to mean not alternate, as was done before, and that was the patentee's idea of their meaning.

Consequently there does not appear to be any difference in the two claims, 6 and 8, but, if there is a difference, and claim 6 means that the flooring is to be laid in alternate sections, as was done before, then two of the purposes of the alleged invention, viz. saving of time and obtaining of uniformity of color, would be frustrated.

A prior suit, in which the present plaintiff, Louis Del Turco, was plaintiff, and the present defendant, Traitel Marble Company, was the defendant, was tried in this court, and a decree made dismissing the complaint, on April 12, 1922.

That suit was based on claim 5 of patent No. 1,368,374, issued to Louis Del Turco, for dividing strip for cementitious floors, which reads as follows:

"5. The improved method for laying terrazzo flooring, which consists in laying the underbed, the provision of a thin strip, forcing such strip vertically in the underbed while the underbed is still wet, said strip projecting from the top surface of said underbed with its top edge establishing approximately the level of the top surface, permitting said underbed to set, and then applying the top surface,"

—and which without any change of words constitutes claim 3 of the reissue patent in suit.

In that suit Judge Garvin rendered an opinion in which he decided that such claim was invalid for lack of a supplementary oath, for lack of any exercise of the inventive faculty disclosed by the plaintiff's method, for lack of art, within the meaning of the patent law, holding that the claim "does nothing more than arrange the position of the surface, the strip, and the underbed, with respect 'to each other," and that defendant did not infringe the claim.

[1] No appeal was taken from the decree dismissing the complaint in that suit, but plaintiff surrendered his patent and secured the reissue patent in suit, and that decree is res adjudicata between the parties in the present case, in respect to the matters stated in claim 5 of the original patent and claim 3 of the reissue patent.

No further consideration of the first ground of invalidity as found by the court, viz. the lack of a supplemental oath, is required, because, even if it was a good ground, it has been removed; but there seems to me to be considerable doubt as to the validity of the reissue patent, because one of the grounds of invalidity stated by Judge Garvin was that there was lack of art. Penn Electrical & Mfg. Co. v. Conroy (C. C. A.) 185 F. 511.

Assuming, but not finding, that, in the face of such decision, a reissue patent could be legally granted, I will consider the defense of res adjudicata.

Claims 6 and 8 describe the strips as "being inserted so that their upper edges will be substantially level with and will divide the surface of the completed terrazzo flooring."

I can see no difference in the meaning of

the descriptions of setting the strips in claims 3, 6, and 8, except one merely of words, because the strips could not be set as described in claim 3 without "dividing the surface of the completed terrazzo flooring," as described in claims 6 and 8, and the strip could not "divide the surface of the completed terrazzo flooring," as described in claims 6 and 8, without extending upward far enough and "establishing approximately the level of the top surface," as described in claim 3.

In any event, it seems to me that the conditions as to whether or not the upper edge of the strips divides the surface of the completed flooring is no part of the method, but merely a characteristic of the product terrazzo flooring produced by a method.

[2] It therefore appears to me that the decree in the former suit between the same parties was res adjudicata as to this suit.

[3] The decision in Traitel Marble Co. v. Hungerford Brass & Copper Co. (C. C. A.) 18 F.(2d) 66, and in Id. (C. C. A.) 22 F.(2d) 259, on the Calkins reissue patent, No. 15,824, and Calkins patent, No. 1,451,491, respectively, are not binding upon the plaintiff in the instant suit, who was not a party or privy to either of those suits.

If the decree in the former suit between the present plaintiff and defendant is not res adjudicata, then the question of validity is open for consideration.

Plaintiff contends that each of the claims, 6 and 8, is for a method.

The steps enumerated in claim 6 are inserting strips in a wet underbed, allowing the latter to set, and then applying a top layer on the underbed; said strips being inserted so that their upper edges will be substantially level with and will divide the surface of the completed terrazzo flooring.

The steps enumerated in claim 8 are the same, except that it states that the method is of laying the flooring in consecutive sections.

The laying of the underbed is not claimed by the patentee as a part of his invention in claims 6 and 8, nor is it anywhere claimed that there is any novel feature of the underbed, which is generally laid by the general contractor and not by either plaintiff or defendant.

The patentee of the patent in suit testified that in carrying out his alleged invention the same kind of underbed is used as that stated in the British patent to Mainzer, No. 3,947, February 23, 1901, viz. "a concrete or cement bed," "the concrete or other bed," "the concrete or other foundation."

No claim is made by the patentee that anything new respecting the top layer is disclosed by the patent in suit, nor does he specifically state in the patent in suit of what kind of material the top layer is to be composed, but states in the specification, "This invention relates to a strip that is used in making terrazzo and similar floors;" and also states, "The invention also relates to the method of laying flooring in which strips as described hereinabove are employed when the underbed is laid and before it sets, and which forms gages and also dividing strips which are in place when the surface layer is applied."

Terrazzo material was described in 1910 in the Swiss patent No. 50,786, issued to Carlo Cassani, for terrazzobelag, terrazzo covering, dated April 12, 1910, as follows:

"Such mixture is, for example, prepared of one part, by weight, of Portland cement, two parts, by weight, of granulated marble, to which may be added granulated mother-of-pearl and the requisite quantity (approximately one-half part by weight) of water in order that the mass may be rendered sufficiently plastic for filling in the empty spaces between the metal strips."

It was old to allow the underbed to set to a certain extent before applying the top coat or layer.

It was not new to set strips in an underbed "so that their upper edges will divide the surface of the completed flooring," as strips so arranged are shown in British patent to Mainzer, No. 3,947, of 1901, and described as "having their upper edges flush with the surface of the mosaic," and, if they are flush with the surface of the mosaic, they must of necessity divide the surface of the completed flooring, and in British patent to Fisher, No. 13,598, of 1893, and United States patent to Leach, No. 1,241,405.

It was not new to set the strips in the underbed while it was wet or plastic, British patent to Fisher, No. 13,598, of 1893, Bayles, United States patent No. 781,869.

Neither was it new to use dividing strips for the purpose of localizing cracks in cementitious or terrazzo flooring. Swiss patent to Cassani, No. 50,786, Mainzer, British patent No. 3,947, of 1901, McKnight, United States patent, No. 271,582.

The only one of the patents cited by the defendant which specifically names terrazzo as the flooring material is the Swiss patent to Cassani, No. 50,786, of 1910, but in this patent the metal strips are not embedded in the underbed but on the underbed, therein described as a layer of cement mortar. Plaintiff's counsel in his brief contends:

"The invention is not a new composition of terrazzo, it is not a novel combination of terrazzo surface and underbed, and it is not a novel strip to be used in flooring. Del Turco does not claim to have been the first to have used a wood or metal strip for the purpose of localizing cracking. But he was the first to propose and introduce a novel and highly useful method of laying terrazzo, which method greatly reduced the cost, and resulted in a much more satisfactory flooring with respect to the uniformity of color and freedom from cracks."

With this contention I cannot agree. It seems to me that, if Del Turco did invent anything, it was the specific strip for which a claim or claims were allowed, and, while no patent offered by the defendant anticipated the patent in suit, I cannot find invention in inserting the strips of the Mainzer patent in the underbed or terrazzo top layer of the Cassani patent, or, conversely, substituting the terrazzo top layer of the Cassani patent for the mosaic top layer of the Mainzer patent.

It is not to be forgotten that Del Turco does not now use the strip described in the reissue patent in suit, but from the year it was reissued he has used almost exclusively the strip shown in the British patent to Mainzer. [4] Whether such acts do or do not constitute invention, claims 6 and 8 of the patent in suit do not, in my opinion, constitute a true method.

There is a wide distinction between a tool and a method, but claims 6 and 8 appear to be built up around the specific strip, the tool, and the only "act or series of acts" referred to in claims 6 and '8 are two—cutting the underbed while in a wet condition, and placing the material on top of the underbed when the underbed has set.

The provision, "said strips being inserted so that their upper edges will be substantially level with and will divide the surface of the completed terrazzo flooring," found in both claims 6 and 8, describes the product, the flooring, as claimed in claims 10 and 11, and not a step in a method.

[5] If there be invention, and claims 6 and 8 are for a true method, the defendant does not infringe.

Even if both of the claims in suit read directly upon the method of the defendant and the result may be said to be identical, the mode of operation and the means by which the result is secured are different. The plaintiff in his patent says:

"In my improved strip, the joint is carried well below the surface, and cracks are much more frequently localized and confined to these points than when these strips are not used."

He does not say in his patent that the strip must be forced down to the bottom of the underbed, but he does say in his circulars, in effect if not in words, that the underbed must be entirely divided into sections corresponding with the sections of the top layer; and he did say on the stand, referring to the strip, if it went through but a small portion, it would be inefficient, if it went nearly through it would be quite efficient, but it would be most efficient if it went all the way through.

Plaintiff and his witnesses all contend that, to be effective, the brass strip must cut the floor in a finished manner, and, if the strip has wings which anchor the two sides of the joint together, the purpose of using it is thereby defeated.

This is exactly what the defendant does, and yet, although plaintiff and his witnesses say that in so doing the purpose of using the strip is thereby defeated, the plaintiff claims that defendant infringes. To so hold would give a much broader construction than is warranted to plaintiff's patent in suit.

[6] There is no question that the failure to utilize a method of a patent in its most advantageous form does not avoid infringement, but that is not the question in the case at bar, because here there is no attempt to cut the floor in a finished manner, but the defendant does deliberately what plaintiff contends defeats the purpose of using the strips, and, by pressing out the wings from the lower half of the strip, enables the material forming the floor to be pressed through the openings formed by pressing out such portions, which material forms a component part of the underbed. The defendant does not infringe.

A decree may be entered in favor of the defendant, dismissing the complaint, with costs.