### FRETWELL v. GILLETTE SAFETY RAZOR CO.

#### No. 4506.

Circuit Court of Appeals, Fourth Circuit.

Oct. 2, 1939.

Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.

Israel H. Perskin, of New York City (George E. Bendall, of Danville, Va., and Herbert J. Jacobi, of New York City, on the brief), for appellant.

Henry R. Ashton, of New York City (E. Walton Brown, of Danville, Va., on the brief), for appellee.

PARKER, Circuit Judge.

This is an appeal by defendant in a suit instituted by a manufacturer of safety razor blades to enjoin defendant, a patentee, from prosecuting an infringement suit against a drug company selling the blades. Defendant asserted a counterclaim to recover damages for alleged breach of contract on the part of plaintiff in appropriating the idea of a locked safety razor disclosed by defendant. The District Court entered a decree enjoining defendant from prosecuting the suit against the drug company and dismissing the counterclaim, and defendant has appealed.

Defendant is the owner of patent No. 1,467,930, covering a locked safety razor, claim 4 of which covers a perforated safety razor blade. In a suit instituted by defendant against plaintiff in the United States District Court for the District of Delaware it was held that this claim was not infringed by blades of plaintiff's manufacture. Fretwell v. Gillette Safety Razor Co., D.C., 6 F.Supp. 818, affirmed, 3 Cir., 78 F.2d 868. Defendant later instituted an infringement suit in the United States District Court for the Western District of Virginia against the Peoples Service Drug Stores, a Virginia corporation, to enjoin the sale of plaintiff's blades; and this suit was thereupon instituted by plaintiff to enjoin the prosecution of that suit. The defense is based upon the admitted fact that the Peoples Service Drug Stores does not purchase the blades alleged to infringe from plaintiff, but from the Peoples Drug Stores, a Maryland corporation, although it is admitted also that the latter corporation purchases from plaintiff and that Peoples Service Drug Stores is a wholly owned subsidiary of that corporation.

We think that the court below was clearly right in granting the injunction. Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065; General Chemical Co. v. Standard Wholesale Phosphate & Acid Works, 4 Cir., 101 F.2d 178; United States Galvanizing & Plating Equipment Corporation v. Hanson-Van Winkle-Munning Co., 4 Cir., 104 F.2d 856. Quite apart from the close relationship existing between the corporation sued by defendant and the corporation actually purchasing from plaintiff, we think it clear that the rule laid down in Kessler v. Eldred, supra, can be invoked by plaintiff to protect its business against suits by defendant charging infringement with respect to blades of plaintiff's manufacture, whether instituted against persons purchasing directly from plaintiff or not. The Delaware suit adjudicated the right of

plaintiff to manufacture and sell its blades free of interference by defendant; and it became the duty of defendant, upon the rendition of the decree therein, "to recognize and yield to that right everywhere and always." Infringement suits against retail dealers in the blades who purchase from plaintiff's customers would interfere with that right quite as effectively as suits against the customers themselves, and plaintiff is entitled to have such suits enjoined to protect it in the enjoyment of the right which has been adjudicated.

The argument is made that the rule of Kessler v. Eldred, supra, extends only to the protection of suits against customers and that, since the Peoples Service Drug Stores does not purchase directly from plaintiff, it is not technically a customer of plaintiff and hence does not come within the rule. The determinative consideration in applying the rule, however, is not the fact that the person sued is a customer of plaintiff but that the suit will interfere with a right of plaintiff which has been adjudicated. As we pointed out in General Chemical Co. v. Standard Wholesale Phosphate & Acid Works, supra [101 F.2d 182] the effect of the adjudication of non-infringement in favor of the manufacturer is to estop the patentee from asserting infringement with respect to sale or use of identical articles of his manufacture on the ground that, "having had his day in court on the question as to whether the product of the manufacturer infringes, he should in all subsequent litigation be bound by the judgment rendered against him with respect to that question." Since, therefore, the patentee is estopped to assert infringement with respect to the product of the manufacturer held not to infringe, and since such suit against a retailer would constitute an interference with the manufacturer's business, there can be no question but that such suit should be enjoined at the suit of the manufacturer.

On the counterclaim, it appears that in the year 1914 defendant disclosed to plaintiff the idea of a locked razor for use in such institutions as jails, hospitals and insane asylums. It is unnecessary to go into the circumstances attending this disclosure, as it is not shown that plaintiff made any use of the idea or manufactured any razors of that character except about half a dozen specially manufactured in the year 1921, three of which were sold by plaintiff to defendant. Defendant sought discovery by way of interrogatories, and two officers of plaintiff's manufacturing plant were examined in open court; but there was no showing of any other manufacture. Under such circumstances, we agree with the court below that there was nothing to support the counterclaim and no basis upon which an accounting could have been ordered. The burden was on defendant to establish that there was something due him before he was entitled to an accounting. Oskaloosa Savings Bank v. Mahaska County State Bank, 205 Iowa 1351, 219 N.W. 530, 60 A.L.R. 1204; Gould v. Burrow, 117 Ga. 458, 43 S.E. 702; 1 C.J.S., Accounting, § 39, page 677. Nothing need be added to what was said by the judge below in dealing with this aspect of the case.

And since the counterclaim was not filed until 1937, approximately sixteen years after the discovery of the alleged use of the idea disclosed, we agree that the right to assert the claim is barred by laches. The statute of Virginia, the state of the forum, prescribes a limitation of five years for suits upon contracts in writing and three years for suits upon other contracts. Code of 1924, sec. 5810. And it is well settled that federal courts of equity, in the enforcement of legal rights, will ordinarily follow state statutes of limitations in applying the doctrine of laches. Pomeroy's Equity Jurisprudence, 4th ed. vol. 4, sec. 1441; Benedict v. City of New York, 250 U.S. 321, 327, 39 S.Ct. 476, 63 L.Ed. 1005; Godden v. Kimmell, 99 U.S. 201, 210, 25 L. Ed. 431; Hall v. Ballard, 4 Cir., 90 F.2d 939, 945; Gross v. Tierney, 4 Cir., 55 F.2d 578, 583; Early v. City of Helena, 8 Cir., 87 F.2d 831, 832; Kelley v. Boettcher, 8 Cir., 85 F. 55, 62. The rule is well stated by the late Judge Walter H. Sanborn in the case last cited as follows: "In the application of the doctrine of laches, the settled rule is that courts of equity are not bound by, but that they usually act or refuse to act in analogy to, the statute of limitations relating to actions at law of like character. * * * The meaning of this rule is that, under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case

in accordance with the equities which condition it. * * * When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches; and, when such a suit is brought after the statutory time has elapsed, the burden is on the complainant to show, by suitable averments in his bill, that it would be inequitable to apply it to his case."

There is nothing in the pleadings of defendant, or in the evidence, showing that it would be inequitable to apply to the counterclaim the provisions of the Virginia statute of limitations and to hold it barred by laches because not asserted within the period allowed by that statute.

For the reasons stated, the decree appealed from will be affirmed.

Affirmed.