**HELENE CURTIS INDUSTRIES, Inc., and Helene Curtis Sales, Inc., Plaintiffs,**

**C. V. Layden, doing business as Southwestern Beauty Products Company, Plaintiff-Intervener,**

**v.**

**SALES AFFILIATES, Inc., Defendant.**

**The GILLETTE COMPANY, Plaintiff, Skillern & Sons, Inc., and Walgreen Drug Company of Texas, Plaintiffs-Interveners,**

**v.**

**SALES AFFILIATES, Inc., Defendant.**

**SALES AFFILIATES, Inc., Plaintiff, The Procter & Gamble Company, Involuntary Plaintiff,**

**v.**

**C. V. LAYDEN, doing business as Southwestern Beauty Products Company, Defendant.**

**SALES AFFILIATES, Inc., Plaintiff, The Procter & Gamble Company, Involuntary Plaintiff,**

**v.**

**SKILLERN & SONS, Inc., Walgreen Drug Company of Texas, and The Gillette Company, Defendants.**

United States District Court
S. D. New York.

Jan. 9, 1957.

Kenyon & Kenyon, Theodore S. Kenyon, and Malvin R. Mandelbaum, New York City, and Adolph A. Rubinson, Chicago, Ill., for Helene Curtis Industries, Inc., Helene Curtis Sales, Inc., and C. V. Layden, d/b/a Southwestern Beauty Products Co.

Henry R. Ashton, New York City, Edgar H. Kent, Boston, Mass., Ryan Berry, New York City, of Fish, Richardson & Neave, Boston, Mass., for Gillette Safety Razor Co.

Hawkins, Delafield & Wood, New York City, Clarence Fried, New York City, of counsel, for Skillern & Sons, Inc., and Walgreen Drug Company of Texas.

Morgan, Finnegan, Durham & Pine, New York City, George B. Finnegan, Jr., New York City, William D. Denson, Washington, D. C., Jerome G. Lee, New York City, and Albert H. Brodkin, Brooklyn, N. Y., for defendants.

IRVING R. KAUFMAN, District Judge.

Plaintiffs applied for an order holding the defendant in contempt of the injunctive provisions of a prior decree of this Court and for a further order adding to the scope of relief originally granted. On consent of the parties, the matter was referred to the Special Master who heard the testimony and reported in the original action, Honorable Simon H. Rifkind, for findings on the issues of law and fact raised by the application. Pursuant to motions for confirmation and modification of the filed Report of the Special Master, that Report is now before the Court for review.

Plaintiffs' application for relief is made at the foot of a prior judgment [1] of this Court entered in a declaratory action between the same parties involved in the instant proceeding. That judgment held defendant's United States Patent No. 2,577,710 (hereinafter called "710") invalid.[2] The 710 patent was a generic patent laying claim to a vast class of mercaptan compositions used for the permanent waving of human hair. Its invalidity was based primarily on a lack of invention over prior art.

Prior to the issuance of the 710 patent, on August 13, 1949, the inventor McDonough filed a continuation-in-part application (Serial No. 110,239) claiming a smaller group of polar, acidic mercaptan compositions as a valid species claim. Among the mercaptans included within this smaller class was thioglycolic acid, which is the principal, if not the only, mercaptan used in commercial permanent waving compositions today. The continuation-in-part claim encountered an interference proceeding in the Patent Office which was pending at the time the judgment of this Court invalidating the parent 710 patent was entered.

After 710 was found invalid but while the "species" application was still pending, the defendant assigned that application to a Virginia corporation, Tidewater Patent Development Company (hereinafter called "Tidewater") in exchange for 2,000 shares of Tidewater's stock. Tidewater thus became the owner of the application, the defendant reserving to itself, under the terms of the assignment, the right to a license when and if the application should mature into a patent.

Following the assignment, the Board of Patent Interferences awarded priority of invention to McDonough, defendant's assignor. On February 28, 1956, the continuation-in-part application ripened into a granted patent, U. S. Patent No. 2,736,323 (hereinafter called "323"). On the same day, Tidewater instituted actions in the United States District Court, for the Eastern District of Virginia, against customers of the plaintiffs Helene Curtis and The Gillette Company, charging infringement of the 323 patent by the sale and use of plaintiffs' manufactured products.

Plaintiffs then instituted the present proceeding in this Court at the foot of the 710 decree. That decree provided, inter alia, that the

" * * * defendant, its agents, servants, employees, attorneys, privies and assigns be and they hereby are enjoined from bringing, prosecuting or threatening to bring or prosecute any suit charging infringement of any claim of United States Patent No. 2,577,710 against plaintiffs or plaintiff-intervenor, or against any agent, vendee or customer of any of them or against any others in privity with any of them."

---

1. The previous action was a consolidation of four separate suits. The four judgments entered, respectively, in Civil Actions Nos. 71–280, 71–284, 76–376 and 76–375 will be collectively referred to in this opinion in the singular.

2. D.C.S.D.N.Y.1954, 121 F.Supp. 490, affirmed, 2 Cir., 1956, 233 F.2d 148, certiorari denied, Sales Affiliates, Inc., v. Helene Curtis Ind., 352 U.S. 879, 77 S. Ct. 101, 1 L.Ed.2d 80. For reported opinions dealing with earlier, procedural phases of this litigation, see Helene Curtis Industries, Inc., v. Sales Affiliates, Inc., D.C.S.D.N.Y.1952, 105 F.Supp. 886, affirmed, 2 Cir., 1952, 199 F.2d 732.

Plaintiffs contend first that the suits brought by Tidewater against plaintiffs' customers in Virginia for infringement of 323 are contumacious of the 710 decree. They base this contention on the following allegations:

(1) Tidewater is in effect a "dummy" corporation set up and controlled by the defendant and therefore, the actions of Tidewater are the actions of the defendant;

(2) The findings of fact and conclusions of law embodied in the 710 judgment necessarily render the 323 patent invalid as against the plaintiffs;

(3) By seeking to relitigate those issues in a new action the defendant is violating the injunctive provisions of the 710 decree.

The Special Master concluded that even if plaintiffs' first two allegations are fully accepted, the defendant, as a matter of law is not guilty of contempt. In the event that the Court disagreed with this conclusion, however, the Master made findings on the specific contention "to avoid the necessity of a further reference." He found that Tidewater is indeed "nothing more than a corporate shell whose sole function is to endow the defendant with an artificially created domicile for the purposes of litigation." Master's Report, p. 22. And he found further that application of the principles of collateral estoppel to 323 compelled the conclusion that it "must be deemed invalid by virtue of the findings of fact and conclusions of law embodied in the 710 judgment." Master's Report, p. 19.

The defendant vigorously disputed these findings both before the Master and before this Court. Since the Master ultimately recommended that plaintiffs' application be denied, however, and since the above determinations become important, as the Master recognized, only in the event that the Court disagrees with his recommended disposition, the instant ruling on the motion to confirm the Master's Report makes a determination of the correctness of those findings unnecessary. The key issue now is whether, assuming the truth of plaintiffs' contentions, they are entitled to the types of relief which they seek.

First, is the defendant in contempt of the 710 decree? The following finding of the Master is uncontroverted.

"\* \* \* the 710 judgment, of course, contains no direct prohibition against the defendant's conduct with respect to 323, but by its terms is limited solely to the 710 patent. Nothing in the former decree limited the defendant's prosecution of its then-pending species application before the Patent Office, or prevented the transfer of the application to a newly organized Virginia corporation, or proscribed the institution of infringement actions based upon such patent, irrespective of its similarity to 710." Master's Report, p. 23.

While plaintiffs concede that defendant's activities were not explicitly prohibited by the 710 decree, they urge the applicability of the principle expressed by the Supreme Court in McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 192–193, 69 S.Ct. 497, 93 L.Ed. 599. Under that principle, although the plan or scheme adopted is not specifically enjoined, the defendant has no immunity from civil contempt if the result or consequence produced by it is otherwise prohibited. The question then is whether the defendant's conduct with respect to 323 constitutes such a "plan or scheme" to circumvent the prohibitions of the 710 decree.

There are three phases of defendant's activities which plaintiffs contend constitute the alleged contumacious plan. They are:

(1) procuring the 323 patent after the 710 judgment;

(2) transferring it to Tidewater; and

(3) bringing suit for infringement through Tidewater against plaintiffs' customers.

▮ Considering these activities in order, did the 710 decree intend to pro-

hibit defendant from procuring its pending 323 application before the Patent Office? The answer unquestionably is no. The Master succinctly summarized the situation as follows:

"First, the entire 710 proceeding—commencing with the pleadings, continuing through the lengthy hearings, the volumes of evidence offered, the argument and the briefs and culminating in the judgment itself—was directed solely to the question of the validity and infringement of the 710 patent, and nothing else. However similar the issues may be with respect to the two patents, at no time did I—nor so far as can be detected, did the District Court or the Court of Appeals—harbor any intent or disposition to go beyond the confines of the 710 patent either in the issues adjudicated or the framing of relief.

"Certainly this was not occasioned by the lack of knowledge of the existence of a potential 323 patent. Concededly, the existence of the application which matured into 323 was a fact known to the plaintiffs and the Court when the judgment in 710 was entered. The 323 application was in evidence in that proceeding and was specifically referred to in the Special Master's Report, where the possibility of future litigation was alluded to. The plaintiffs, who knew full well of the defendant's predilection for patent litigation, had no right to expect the defendant to abandon its 323 application or to refrain from prosecution of any future patents to the utmost.

"Yet they did not ask for nor were they granted any relief against the portent of the 323 patent. If such relief were available to them, but they did not request it, they have no cause to complain if the defendant proceeded to do what it was *not* forbidden to do.

"Actually, had plaintiffs sought such relief directly in the 710 proceeding, their request would have been denied. Surely, the defendant could not have been enjoined from prosecuting a patent application before the Patent Office simply because it bore a marked similarity to a patent judicially declared to be invalid. Neither reason nor precedent can be found to support the invalidation of a patent not yet issued. Patents, like infants, can only be dealt with as they issue and not *en ventre sa mere.*" Master's Report, pp. 24–25.

Plaintiffs seek to analogize the present situation to that of "an enjoined infringer who colorably modifies his adjudicated structure in an attempt to circumvent injunction." Memorandum for Plaintiffs on Master's Report, p. 22. Certainly, however, it cannot be argued that the idea for obtaining the species patent was hatched to evade the 710 decree. The 323 application had been pending before the Patent Office since 1949. The 710 judgment was entered in 1954. If there was an element of fraud in the eventual procurement of the patent, as plaintiffs allege, it is wholly extraneous to the issues adjudicated by the 710 judgment.

■ Although the defendant was not guilty of contempt in procuring 323, was the transfer to Tidewater contumacious? Assuming that Tidewater was created by the defendant for the sole purpose of avoiding litigation of 323 in the Second Circuit, it does not follow that this constitutes a violation of the 710 judgment. Plaintiffs seem to contend that even apart from the 710 judgment, the attempt to deprive this Court of jurisdiction over 323 through devious forum-shopping techniques constitutes contempt of court. Even if the matters adjudicated in the 710 judgment would be conclusive as to the validity of 323 and although forum-shopping is strongly disapproved, since the 323 patent was never subject to the jurisdiction of this Court, defendant cannot be held guilty of contempt on this ground.

■ The third activity which is allegedly contumacious is the prosecution of the Virginia infringement suits through Tidewater against plaintiffs' customers. Plaintiffs contend that since the findings in the 710 action inescapably indicate that 323 is invalid as against the plaintiffs and their customers, the attempt to relitigate those issues is violative of the intended scope of prohibition of the 710 decree—i.e. to conclusively settle the issues there litigated. I find the Master's conclusion on this point unassailable.

> "Once having issued, the 323 patent represented a monoply granted by the United States Government to the defendant which in substance constituted a new charter to litigate the claims contained therein. Whatever the defendant's belief as to the validity of that patent, I fail to appreciate how it can be guilty of contumacious conduct for having exercised a presumptively valid franchise granted to it by its own Government and not enjoined by any existing order or judgment." Master's Report, p. 25.

The likelihood that the new patent may eventually be invalidated because of the application, through collateral estoppel, of the findings determined in the previous action on the 710 patent, certainly does not render the party who brings suit on the new patent guilty of contempt of the judgment in the former 710 suit. Plaintiffs seek to explain away their failure to include any reference to the 323 application in the 710 decree by stating that they could not have obtained relief against 323 at that time had they sought it. Since they concede that the 710 decree could not have *explicitly* protected them from suit on 323, it is difficult to see how they can now contend that it *implicitly* prohibited defendant from its course of conduct.

Individually and collectively, the three elements comprising defendant's ac-

tivities toward the 323 patent do not violate the 710 decree. Plaintiffs' application to punish the defendant for contempt must be denied.

The second branch of plaintiffs' application for relief at the foot of the 710 decree seeks an order enjoining defendant from prosecuting any suit charging plaintiffs or their customers with infringement of the 323 patent. Plaintiffs base this request on the contention that the " * * * defendant is estopped by the judgments in the 710 litigation from asserting that the 323 patent is valid against plaintiffs or their customers as defendant has done by the Virginia suits." Memorandum for Plaintiffs on Master's Report, p. 7.

Assuming that the findings on the parent 710 patent do work an estoppel against the defendant's successful prosecution of infringement actions against plaintiffs' customers, is this instant application, summary in nature, a proper method for determining that question and for enjoining the bringing of further suits when the validity of 323 has not been determined in a plenary action? The Special Master answered this question in the negative. While plaintiffs concede that there is no direct precedent supporting their position, they urge that the question be answered affirmatively for the following reasons:

(1) "The jurisdiction of courts of equity to interfere and effectuate their own decrees by injunctions or writs of assistance, in order to avoid the relitigation of questions once settled between the same parties, is well settled." Root v. Woolworth, 1893, 150 U.S. 401, 411–12, 14 S.Ct. 136, 139, 37 L.Ed. 1123.[3]

(2) Suit on 323 would necessarily involve a relitigation of issues settled by the 710 litigation.

(3) A related patent may be invalidated and infringement actions enjoined on

---

3. See also, Dugas v. American Surety Co., 1937, 300 U.S. 414, 428, 57 S.Ct. 515, 81 L.Ed. 720; Berman v. Denver Tram-

way Corp., 10 Cir., 1952, 197 F.2d 946, 950.

**346**

the basis of prior litigation through the application of collateral estoppel.[4]

(4) The fact that res judicata may be asserted as a defense to a later action for patent infringement does not prevent a different court from enjoining the bringing of those later actions where the matter is res judicata.[5]

■ What validity and applicability do these arguments have to the instant situation? Here, as the Master found, the plaintiffs' application *"in effect* seeks an adjudication of the invalidity of the 323 patent in this summary proceeding * * *."* (Italics supplied.) Master's Report, p. 25.[6] Plaintiffs have been unable to refer me to any case in which a subsequent patent was disposed of in a summary proceeding at the foot of a prior judgment involving a different patent. Even in the case of reissue patents, which must be for the same invention as the parent patent, although the parent was invalidated, it was necessary to bring a plenary action

for the invalidation of the reissue patent before an injunction would issue.[7] A presumption of validity attaches to every patent;[8] it constitutes a new cause of action and must be litigated anew in a plenary suit. This, of course, does not mean that the defense of collateral estoppel is not available in the plenary action. Collateral estoppel has been invoked to invalidate not only reissue patents, where the parent had been invalidated previously,[9] but also process patents where the product patent had been invalidated earlier.[10] Thus, the plaintiffs undoubtedly will be able to raise the invalidity of the 710 genus patent as a defense to the infringement actions on the 323 species patent in Virginia. If 323 is found invalid, it will follow that plaintiffs will then be entitled to an order enjoining all future actions against them or their customers based on that patent.[11] Plaintiffs may even be able to obtain a preliminary injunction in the Virginia court pending a final determination on the merits.[12]

4. Mills Alloys v. Stoody Co., 9 Cir., 1938, 94 F.2d 413; B. F. Goodrich Co. v. American Lakes Paper Co., D.C.Del.1938, 23 F.Supp. 682.

5. Kessler v. Eldred, 1907, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065; Fretwell v. Gillette Safety Razor Co., 4 Cir., 1939, 106 F.2d 728, certiorari denied 1940, 310 U.S. 627, 60 S.Ct. 978, 84 L.Ed. 1398; Aleograph Co. v. Electrical Research Products Co., 5 Cir., 1936, 82 F.2d 625, certiorari denied 1936, 299 U.S. 551, 57 S.Ct. 13, 81 L.Ed. 405.

6. While plaintiffs vigorously insist that they are not seeking a declaration of 323's invalidity but merely an order enjoining defendant from asserting its validity, this is a vapid exercise in semantics—the effect is identical. Moreover, without a finding of invalidity, the scope of monopoly power which a patent represents could not be restricted. Hence, a finding that the 323 patent is invalid as against the plaintiffs is a necessary condition precedent to their exemption from its operation.

7. See Rancourt v. Panco Rubber Co., 1 Cir., 1931, 46 F.2d 625, 627; Frink Co. v. Erikson, 1 Cir., 1927, 20 F.2d 707; B. F. Goodrich Co. v. American Lakes

Paper Co., D.C.Del.1938, 23 F.Supp. 682; Del Turco v. Traitel Marble Co., D.C. E.D.N.Y.1928, 25 F.2d 308.

8. "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it." 35 U.S.C. § 282.

9. See Rancourt v. Panco Rubber Co., 1 Cir., 1933, 67 F.2d 790.

10. See Mills Alloys v. Stoody Co., 9 Cir., 1938, 94 F.2d 413; Vapor Car Heating Co. v. Gold Car Heating & Lighting Co., 2 Cir., 1925, 7 F.2d 284.

11. Kessler v. Eldred, 1907, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065; Fretwell v. Gillette Safety Razor Co., 4 Cir., 1939, 106 F.2d 728, certiorari denied, 1940, 310 U.S. 627, 60 S.Ct. 978, 84 L.Ed. 1398; Aleograph Co. v. Electrical Research Products, 5 Cir., 1936, 82 F.2d 625, certiorari denied, 1936, 299 U.S. 551, 57 S.Ct. 13, 81 L.Ed. 405.

12. B. F. Goodrich Co. v. American Lakes Paper Co., D.C.Del.1938, 23 F.Supp. 682; General Ry. Signal Co. v. Union Simplex Train C. Co., D.C.Del.1938, 23 F.Supp. 667, affirmed per curiam, 106 F.2d 1018, certiorari denied 1940, 309 U.S. 678, 60 S.Ct. 716, 84 L.Ed. 1022.

Plaintiffs, however, not content with these remedies, seek to extend the doctrine of Kessler v. Eldred [13] to the instant situation. In that case, after a patent had been held invalid the patentee Eldred continued to bring suits against the customers of Kessler charging infringement of the *same* patent by the *same* device. The Court held that although Kessler or his customers could have raised res judicata as a defense in all the subsequent suits, that remedy was inadequate. They therefore enjoined Eldred from prosecuting any further infringement actions on the invalidated patent against Kessler's customers.

The instant proceeding presents a totally different picture. The 323 patent is still presumptively valid; its validity never having been tested. Here also, the plaintiffs are not called upon to defend a potentially large number of suits based on that patent, as was the case in Kessler, but rather to defend only one action. If 323 is declared invalid, as I have stated, plaintiffs and their customers will be able to obtain their injunction against further suits at that time. This can hardly be termed an inadequate remedy.

Despite the extreme reluctance on the part of the Courts to extend Kessler beyond the facts involved in that case,[14] plaintiffs urge that it should be expanded in the instant situation to preserve and effectuate the prior decree of this Court. In support of this contention, plaintiffs have cited an abundance of authority illustrative of the fact that courts do enjoin attempts to relitigate the same cause of action to protect an original decree.[15] These cases would be relevant if plaintiffs were now seeking to enjoin an action under the 710 patent to protect the original decree in the 710 patent litigation. Since 323 was not in issue in that litigation and since this Court has never had jurisdiction over the 323 patent, the cases are inapplicable to the present situation.

Plaintiffs also brought to the Court's attention cases involving the modification of devices adjudged infringements.[16] These cases are pertinent, plaintiffs contend, because they illustrate the fact that although a defendant may not be in contempt of a prior decree, nevertheless a supplemental injunction will issue against a new device if it is only colorably different from the device adjudged to infringe. They argue that 323 is only colorably different from 710.

"In short, where the decisive questions have been determined in the main question, a new question which did not exist at the time that the main case was tried, but which is germane to it and which is controlled by the reasons and conclusions which are embodied in the decree, when that situation arises the proper procedure is to go to the Court which established the right by its decree and by supplemental proceedings there ask for the relief necessary to enjoin that second cause of action." Stenographer's Minutes of oral argument before the Court on Master's Report, p. 15.

The modification of an infringing device case, however, differs from the instant situation in a number of important respects. Firstly, the law is clearly established that a supplemental injunction will only issue "to make more clear and specific what had already been

13. 1907, 206 U.S. 285, 27 S.Ct. 611, 51 L. Ed. 1065.

14. See Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co., 1914, 232 U.S. 413, 417, 34 S.Ct. 403, 58 L.Ed. 663; Buckeye Incubator Co. v. Boling, 6 Cir., 1931, 46 F.2d 965.

15. See e. g. Dugas v. American Surety Co., 1937, 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720; Dietzsch v. Huidekoper, 1880, 103 U.S. 494, 26 L.Ed. 497; Berman v. Denver Tramway Corp., 10 Cir., 1952, 197 F.2d 946.

16. See e. g. Wachs v. Balsam, 2 Cir., 1930, 38 F.2d 50; Better Packages v. L. Link & Co., 2 Cir., 1934, 68 F.2d 904.

enjoined." [17] It may not issue to enlarge the scope of the original injunction. Since the 710 injunction did not and could not have enjoined defendant from procuring the 323 patent, any injunction directed at that patent would clearly go beyond the scope of the original decree. In the infringing device cases, if the plaintiff could have forecast defendant's machinations when the decree was being formulated, they could have been explicitly prohibited at that time. In the instant case, however, plaintiffs had full knowledge of the pending 323 application before the 710 judgment was entered. Since they could not have enjoined its operation against them at that time it would be an improper expansion of the scope of that decree to permit them to do so now.

■ Furthermore, by its very nature a new patent is not analogous to a modified infringing device. The new patent, regardless of its resemblance to a previously invalidated patent, constitutes a grant by the United States Government of a presumptively valid franchise. It should not be disposed of in a summary proceeding at the foot of a prior judgment involving a different patent.

■ Moreover, there is a fundamental distinction between enjoining an infringing device and enjoining the prosecution of a pending suit.

"It is the general rule, strongly fortified by both reason and authority, that one will not be restrained by injunction from proceeding with a pending suit in equity in the courts of another jurisdiction, either state or federal, except to prevent a manifest wrong or injustice, or otherwise stated, unless it clearly appears that full and complete relief cannot be obtained in such pending suit." [18]

■ Such compelling reasons for enjoining the pending Virginia actions are not present in this case. As the Master found,

"Actually, the plaintiffs will not be required to litigate anew the issues once resolved by the 710 judgment. On the facts shown here, the plaintiffs or their customers may assert the defense of res judicata in the already pending Virginia actions and obtain as prompt a determination of the validity of the 323 patent as could be obtained in this proceeding. The prior judgment of this Court provides ample protection to the plaintiffs and I perceive no real need for embarking upon an exercise of jurisdiction which I believe to be both unprecedented and unsound." Master's Report, p. 26.

Plaintiffs have devoted considerable time and expense in their effort to have this Court rather than the Federal District Court for the Eastern District of Virginia determine the validity of the 323 patent.[19] Surely, they cannot be

17. Singer Mfg. Co. v. Seinfeld, 2 Cir., 1937, 89 F.2d 35, 37.

18. American Seeding Machine Co. v. Dowagiac Mfg. Co., 6 Cir., 1917, 241 F. 875, 877, quoted in Frink Co. v. Erikson, 1 Cir., 1927, 20 F.2d 707, 712.

19. Various courts appear to have adopted divergent attitudes towards the validity of patents. See Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 1952, 342 U.S. 180, 184, 72 S.Ct. 219, 96 L.Ed. 200. The situation has been summed up as follows:
"In perhaps no other branch of the law is the choice of forum of as much practical import as in patent litigation when the validity of a patent is in question.
"Comprehensive statistical analysis of the disposition of patent cases in recent years by the various circuits have revealed striking contrasts in "hospitality" towards patents. For example, between 1945 and 1949 the Fifth Circuit found the patent in suit to be valid in 77 per cent of its opinions. By contrast, the Second Circuit found the patent in suit to be valid in only 7 per cent of its opinions." Seidel, Venue in Patent Litigation, 22 Geo.Wash.L.Rev. 682 (1954). To take advantage of this apparent lack of judicial uniformity, the plaintiffs and defendant have gone to great lengths to select and avoid various forums. In

heard to urge this factor as a valid ground for granting their request. Nor can they contend that the Virginia court is less competent to apply the doctrine of collateral estoppel to the 323 patent than is this Court.

Certainly in the light of this Court's determined effort to bring to final judgment with dispatch the litigation concerning the 710 patent, the activity of the defendant with respect to the 323 patent is frustrating. It will be recalled that in my decision of June 5, 1952, 105 F.Supp. 886, enjoining the other actions on the 710 patent brought by the defendant I characterized its activity as "forum shopping with a vengeance." At page 902. Upon the affirmance of this ruling by the Court of Appeals on November 5, 1952, 199 F.2d 732, the Court recognized "a major industry is left in turmoil for some years while litigation as to it sprouts in various parts of the country." At page 733. These maneuvers by the defendant, while frustrating to the Court and the successful litigants in the 710 action, cannot nevertheless be an excuse for disposing of the plaintiffs' application mechanically and not discriminately.

While every inclination is to bring about a prompt and final disposition of the 323 patent in this court, prudence and precedent compel the conclusion that its validity should be determined in proceedings already instituted elsewhere.

For the foregoing reasons, I adopt the recommendations of the Special Master. Plaintiffs' application must be denied. So ordered.

---

the 710 litigation, the plaintiffs won "the race to the courthouse" by bringing a declaratory judgment action in this court within less than an hour after the patent issued. The defendant exerted every effort to have the action removed to another forum. Failing that, they sought to bring simultaneous actions in other courts. See discussion in D.C.S.D.N.Y. 1952, 105 F.Supp. 886, and 2 Cir., 1952, 199 F.2d 732. As for 323, the Master found that the defendant created Tidewater for the express purpose of avoiding a test of its validity in this Court. On the same day that 323 was issued by the Patent Office, Tidewater brought the infringement actions in Virginia. Plaintiffs, rather than following the normal procedure of raising collateral estoppel as a defense to the Virginia actions have urged the adoption of a novel procedural device before this Court to avoid a test of 323's validity in the Virginia court.

Requiring this exorbitant waste of judicial man hours to adjudicate the propriety of forum shopping devices is an appalling condition.