HELENE CURTIS INDUSTRIES, Inc., Helene Curtis Sales, Inc. and C. V. Layden, doing business as Southwestern Beauty Products Company, Plaintiffs-Appellants,

v.

SALES AFFILIATES, Inc., Defendant-Appellee.

The GILLETTE COMPANY, Skillern & Sons, Inc., and Walgreen Drug Company of Texas, Plaintiffs-Appellants,

v.

SALES AFFILIATES, Inc., Defendant-Appellee.

SALES AFFILIATES, Inc., Plaintiff-Appellee, the Procter & Gamble Company, Involuntary Plaintiff,

v.

C. V. LAYDEN, doing business as Southwestern Beauty Products Company, Defendant-Appellant.

SALES AFFILIATES, Inc., Plaintiff-Appellee, The Procter & Gamble Company, Involuntary Plaintiff,

v.

SKILLERN & SONS, Inc., Walgreen Drug Company of Texas, and The Gillette Company, Defendants-Appellants.

Nos. 341–344, Dockets 24524–24527.

United States Court of Appeals Second Circuit.

Argued May 7–8, 1957.

Decided Sept. 5, 1957.

On Motion for Recall of Mandate, etc., Nov. 6, 1957.

---

* See Achilli v. United States, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918; Forster v. United States, 9 Cir., 237 F.2d 617.

Cravath, Swaine & Moore, New York City (Bruce Bromley and Jack E. Brown, New York City, of counsel), for appellants.

Kenyon & Kenyon, New York City (Theodore S. Kenyon, New York City; Adolph A. Rubinson, Maurice S. Cayne, of Chicago, Ill., and Malvin R. Mandel-

baum, New York City, of counsel), for Helene Curtis Industries, Inc., and others.

Henry R. Ashton, New York City (Edgar H. Kent, Boston, Mass. and Rynn Berry, New York City, of counsel), for The Gillette Co.

Hawkins, Delafield & Wood, New York City (Clarence Fried, New York City, of counsel), for Skillern & Sons, Inc., and others.

Morgan, Finnegan, Durham & Pine, New York City (George B. Finnegan, Jr., New York City, William D. Denson, Washington, D. C., Jerome G. Lee and Albert H. Brodkin, New York City, of counsel), for appellee.

Before CHASE, HINCKS and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

The question for decision is this: Where one federal court after protracted and expensive litigation, has already decided that a patent is invalid and has enjoined the defendant-patentee from suing thereon, may that court issue a supplemental injunction enjoining that patentee from suing customers of the plaintiffs under the cloak of another corporate shell in another circuit of our federal judicial system for infringement of a later-issued patent, which is invalid for substantially the same reasons as the earlier patent? We think the answer should be in the affirmative. On principle and logic, and on those precedents which look toward a sensible, flexible and expeditious administration of justice, we hold that the District Court has the power to enjoin the defendant's attempt to relitigate already-tried issues. We hold that the District Court should pass upon the Special Master's report, and, if it confirms the findings, it should give appropriate injunctive relief.

In summary, the Special Master found that both 323 and 710 are essentially the identical void invention and that accordingly 323 "must be deemed invalid by virtue of the findings of fact and conclusions of law embodied in the 710 judgment." He further found that Tidewater was Sales Affiliates' alter ego and that it was "nothing more than a corporate shell whose sole function is to endow the defendant with an artificially created domicile for the purposes of litigation." In short, the Special Master found that Sales Affiliates through its alter ego was enforcing in another circuit a patent which, under the findings and conclusions affirmed by this court, was invalid, although as yet not adjudicated.

Despite these findings, the Special Master recommended against expanding the terms of the injunction. The Special Master also recommended that the application to punish for contempt be dismissed and this was also adopted by the District Court. As to the matter of punishing for contempt under the circumstances of this case, we affirm on the opinion below. 148 F.Supp. 340. The District Court, without passing upon the findings of the Special Master, held that even if the findings were correct it should not and could not expand the judgment to enjoin assertion of rights under 323 and it denied the plaintiffs' application.

The principal milestones in this protracted patent litigation are as follows. On June 16, 1941, Sales Affiliates' assignor, Everett G. McDonough, filed a patent application for a "cold-wave" method for permanent waves for women which employs any one of a broad class of chemical compounds known as mercaptans. Ten and a half years passed before the patent, 2,577,710 (hereafter 710) was issued, during which time there were "countless actions, rejections, amendments, interferences and the like, running the entire gamut of Patent Office procedure and practice." [1]

Within a few minutes after the patent was issued on December 4, 1951, six law suits were filed, two in the Southern District of New York by Helene Curtis and The Gillette Company for declara-

---

[1]. Master's Report (1954), p. 7–8. The Patent Office file history ran to over 1,000 pages.

tory judgments that the patent was invalid, and four by Sales Affiliates in the District of Columbia against seven defendants for infringement.[2] In March 1952, Sales Affiliates commenced two infringement actions in the Northern District of Texas, Dallas Division, against customers of Gillette.

On June 5, 1952 Judge Irving Kaufman in the court below, passing upon numerous motions made by Helene Curtis and Gillette, granted injunctions *pendente lite* restraining Sales Affiliates and others from prosecuting the Texas actions and referred all the issues to a Special Master[3] for hearing and report. 105 F.Supp. 886. We affirmed his decision in October 1952, 199 F.2d 732.

Meanwhile in June 1952, a few days after Judge Kaufman's decision, the District Court in Texas transferred the two Texas actions to the Southern District of New York for consolidation with the two actions there pending.

After two months of taking depositions, the trial before the Special Master commenced on October 21, 1952 and continued into January 1953, making a record of over 6,000 pages and almost 1,000 exhibits. Almost 1,000 pages of briefs were added to the labors of the Special Master who, finally on January 13, 1954, filed a report of 129 pages. His report recommended that Patent 710 be declared invalid on grounds of inadequate disclosure, lack of invention, anticipation and indefiniteness and that the suits brought by Sales Affiliates be dismissed. Judge Kaufman confirmed the report in a lengthy opinion, 121 F.Supp. 490, filed in April 1954, and entered judgments on May 6, 1954 in all four actions: he declared the invalidity of 710, and enjoined Sales Affiliates in the following language:

"4. That defendant, its agents, servants, employees, attorneys, privies and assigns be and they hereby are enjoined from bringing, prosecuting or threatening to bring or prosecute any suit charging infringement of any claim of United States patent No. 2,577,710, against plaintiff's or plaintiff-intervener, or against any agent, vendee or customer of any of them or against any others in privity with any of them."

We affirmed in April 1956, 2 Cir., 233 F.2d 148, certiorari denied 352 U.S. 879, 77 S.Ct. 101, 1 L.Ed.2d 80.

Meanwhile, since August 13, 1949, a continuation-in-part patent application based on 710, filed by Sales Affiliates, was meandering through the Patent Office and finally on February 28, 1956 it emerged as Patent 2,736,323 (hereafter 323).

In January 1955, eight months after Judge Kaufman had found 710 invalid, Sales Affiliates had caused Tidewater Corp. to be organized in Virginia, and assigned to it the application for what later issued as 323 reserving a license (in the event that a patent should issue) in return for all of Tidewater's stock. On 323's natal day, February 28, 1956, Tidewater filed suits in the federal court at Norfolk, Virginia, charging Helene Curtis and Gillette customers with infringement of 323.[4]

On May 8, 1956, one month after our affirmance of 710's invalidity, the plaintiffs moved in the four Southern District of New York actions (1) to enjoin Sales Affiliates, its officers, agents and privies, from bringing, prosecuting or threatening to bring or prosecute any suit charging infringement of 323 against the plaintiffs or any of their

2. These actions were later dismissed on the motions of Sales Affiliates after certain motions had been argued in the Southern District of New York in April and May 1952, 105 F.Supp. 886 (1952).

3. Hon. Simon H. Rifkind, who served with distinction as District Judge for the Southern District of New York from 1941 to 1950.

4. Suits were filed against the same defendants the day before, but Tidewater took voluntary dismissals in these February 27 cases.

customers, and specifically the two actions already commenced in Virginia; (2) to have the defendant, its officers, etc. adjudged in contempt for violating the injunctive provisions of the judgments of May 6, 1954; and (3) to order the defendant to reimburse the plaintiffs for damages incurred, including costs and reasonable attorneys' fees in those proceedings. In brief, the plaintiffs alleged that 323 was invalid for the same reasons that 710 was invalid, and that the Virginia suits based on 323 were merely part of a scheme to circumvent the injunction regarding 710 by the use of a dummy corporation.

Judge Kaufman, on consent of the parties, 1957, 148 F.Supp. 340, 342, on May 12 again referred the issues of law and fact to Simon H. Rifkind as Special Master to report his findings of fact and conclusions of law on the motions and counter-motions. The order of reference provided that the Special Master "take further testimony, if necessary, and to report to the Court his findings of fact and conclusions of law thereon."

The proceedings which followed show that the parties had the fullest opportunity to develop and present any evidence bearing upon the two issues which the Special Master framed for trial. On May 14 the Master held a lengthy hearing concerning procedure. On May 16 Sales Affiliates filed a motion to dismiss the motions of the plaintiffs. There was a further lengthy hearing on May 18 of the motion to dismiss, and on May 31 the Master notified the parties of the two issues which he would try:

"1. Whether the findings of fact upon which the judgments in the 710 action rest require and compel a holding that the 323 patent is invalid; and

2. Whether the defendant, its officers or agents own or control Tidewater or are accountable for the actions of Tidewater."

On June 4, Sales Affiliates filed an elaborate answer in which it demanded that "oral evidence be taken upon the issues so raised by the pleadings and that the respective parties be required to establish the truthfulness of their allegations by competent oral and written testimony."

On June 7 depositions of two witnesses were taken in Kansas City by Sales Affiliates pursuant to notice.

On June 9 the issues were tried before the Special Master: witnesses were examined and cross-examined, and numerous exhibits were received. All parties were accorded every opportunity to present any evidence which might be relevant.

After filing briefs on July 10, the Master heard further extended arguments on September 12 and filed his report on November 9.

This statement of the steps taken to try and to decide the issues raised by the plaintiffs' motions, and an examination of the record, show that the Master gave the most full and careful consideration to every phase of the matter. Every procedural and substantive safeguard was afforded the parties, the issues were fully stated and framed, and there was as full a trial of the issues as both parties desired. Moreover, the Master brought to the consideration of the issues his previous experience in presiding for six months at the depositions and trial of the 710 issues in 1954 and writing a lengthy opinion after twelve more months of study.

On January 9, 1957, Judge Kaufman confirmed the recommendations of the Special Master. He did not pass upon the Master's findings as to the validity of 323 or Tidewater's paternity and control, but assumed *arguendo* that the Master's findings were correct. He denied the injunction on the ground that "prudence and precedent compel the conclusion that its [323's] validity should be determined elsewhere." The District Judge cited 35 U.S.C.A. § 282 and said that [148 F.Supp. 346] "A presumption of validity attaches to every patent; it constitutes a new cause of action and must be litigated anew in a plenary suit."

He thought that the plaintiffs here might plead in the Virginia action that Tidewater is estopped by the decision on 710, and that they may even be able to obtain a temporary injunction in Virginia.

We hold that neither common sense nor precedent relegates the plaintiffs to such small comfort after six years of lengthy and expensive litigation in this circuit. There has been a potential state of warfare in the industry since the late 1940's at least. 105 F.Supp. 886, 897–899. This Court noted that "a major industry [had been] left in turmoil for some years while litigation * * * sprout[ed] throughout the country. * * * It appears that * * * strong threats of litigation had demoralized the business." 2 Cir., 1952, 199 F.2d 732, 733. The decision as to 710 should have settled matters but now the plaintiff has introduced evidence tending to indicate that under the cloak of a second patent, Sales Affiliates is attempting to keep the industry in a turmoil by subjecting retailers and manufacturers of these products to infringement suits throughout the country. Thus, not only the present plaintiffs but also the entire industry are in sore need of injunctive relief if under the facts and the law it is available.

We think that the District Court upon findings such as were made by the Master would have the power to restrain Sales Affiliates from enforcing 323 and should do so if it affirms these findings.

■■ If 323 had issued to Sales Affiliates before appellants' original declaratory judgment action had been brought, surely the validity of 323, as well as 710, could have been litigated in a single action. Certainly if they are related, two or more patents may be the subject matter of a single declaratory judgment action between the same parties. This being so, the appellants might properly have tried the validity of 323 in the supplemental proceedings below if 323 had issued to Sales Affiliates, instead of Tidewater, and even though 323 issued after the original declaratory judgment action was instituted. If Tidewater is found to have been a mere corporate shell, an alter ego of Sales Affiliates, there would be nothing improper in the use of supplemental proceedings below.

■ Outside the patent field it is clear that "a federal court of equity has jurisdiction of a bill ancillary to an original case or proceedings in the same court * * * to secure or preserve the fruits and advantages of a judgment or decree rendered therein * * *." Local Loan Co. v. Hunt, 1934, 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230. See also Dietzsch v. Huidekoper, 1880, 103 U.S. 494, 26 L.Ed. 497. The mere separateness of the cause of action has not been considered an absolute bar to the granting of supplemental relief.[5]

In the patent field itself, in Kessler v. Eldred, 1907, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065, the Supreme Court permitted a successful defendant in an infringement suit to enjoin a later suit by the patentee against a customer of the defendant. Judge Kaufman rightly observed that Kessler dealt with the same patent whereas here 323 is a different patent which is a presumptively valid additional grant by the government to be dealt with only in a "plenary" action. Because of these points of difference he thought the Kessler doctrine could not be applied to the situation here.

But holdings such as Dugas, supra, Note 5, and Gunter, supra, Note 5, do not depend upon the existence of absolutely identical causes of action, but only on similar or related causes of action. The Master in the case at bar has found that 323 is invalid for the same

5. See, e. g., Dugas v. American Surety Co., 1937, 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720 (suits on separate bonds against different sureties in which the first surety was allowed to enjoin the suit on the second bond in supplementary proceedings); Gunter v. Atlantic Coast Line, Inc., 1906, 200 U.S. 273, 291, 26 S.Ct. 252, 50 L.Ed. 477 (suits for taxes enjoined in proceedings ancillary to the decree in a prior unsuccessful suit by the state for taxes for earlier years).

reasons which caused 710 to be held invalid. If that finding be sound there is sufficient identity between the causes of action on these two related patents for the injunctive relief sought here.

Moreover, the only missing badge of a plenary proceeding was the service of an original summons. In fact, Sales Affiliates responded to a show cause order, and the lack of nothing more than an original summons is not sufficient to preclude relief which ordinarily is dispensed under the banner of "plenary" proceedings. Indeed, it is difficult to imagine what more could possibly have been presented in a so-called "plenary" proceeding.

■■ Finally, there is precedent not only for enjoining a party from suing for infringement, on a motion for summary judgment, see A. Belanger & Sons, Inc., v. Brisk Waterproofing Co., D.C. D.Mass.1953, 116 F.Supp. 127, 130, affirmed, 1 Cir., 1954, 209 F.2d 169, 172–173, but also for actually declaring a patent invalid on the basis of collateral estoppel on a motion for a preliminary injunction. See B. F. Goodrich Co. v. American Lakes Paper Co., D.C.D.Del. 1938, 23 F.Supp. 682.[6] And the presence of the record owner of the patent is not always indispensable to a decree of its invalidity. A. L. Smith Iron Co. v. Dickson, 2 Cir., 1944, 141 F.2d 3.

■ We believe the Kessler approach and attitude are persuasive reasons for the granting of an injunction in this case. The injunction should not be withheld merely because of the possibility that it may not terminate pending litigation in Virginia.

Nothing in the case of Armstrong v. DeForest Radio Tel. & Teleg. Co., 2 Cir., 1926, 10 F.2d 727, 728, militates against the conclusions here reached. Indeed, that case indicates that the injunction sought below would have been properly granted if 323 had been in existence and before the court at the time the invalidity of 710 was litigated.

And in Singer Mfg. Co. v. Seinfeld, 2 Cir., 1937, 89 F.2d 35, 37, the court relied upon the Armstrong case in reaching its conclusion, and remarked that Singer might well have been "entitled" to a supplemental injunction.[7]

For these reasons the case is remanded to the District Court to pass upon the findings of the Special Master. If the District Court should confirm the findings that 323 is invalid for substantially the same reasons that 710 was invalidated, and that Tidewater was a mere alter ego of Sales Affiliates, then the District Court should issue an appropriate supplemental injunction.

Order refusing to hold in contempt, affirmed; denial of supplemental injunction reversed and case remanded for further proceedings.

CHASE, Circuit Judge (dissenting).

I agree that the appellees did not violate the injunction but cannot agree that it was erroneous to deny the application for a supplemental injunction. I would affirm the judgment on the opinion below. Helene Curtis Industries v. Sales Affiliates, D.C., 148 F.Supp. 340.

On Motion for Recall of the Mandate, for Stay of Execution, and for a Revision of the Taxation of Costs

PER CURIAM.

Motion denied.

Proceedings below pursuant to our opinion will not prejudice the position of Sales Affiliates in its contemplated application for certiorari. Viewing this controversy in perspective against the ramifications of its background we think the balance of convenience militates against the requested stay. Magnum Co. v. Coty, 262 U.S. 159, 43 S.Ct. 531, 67 L.Ed. 922.

As to the taxation of costs, it is clear that the great bulk of the record and briefs were directed to the issues on which the appellants prevailed.

6. The reissue situation in Goodrich seems to us quite analogous to this case, for a reissue patent is no more the same patent than is the original than is a continuation-in-part patent which is what we have here; in both cases there may be claims in the later patent which would validate it despite the invalidity of the adjudicated patent. See Rancourt v. Panco Rubber Co., 1 Cir., 1933, 67 F.2d 790, 792.

7. At page 37 the Court stated that its affirmance of the District Court's denial of the plaintiff's application for a supplemental injunction was "without prejudice to the right of the plaintiff either to renew the application or to proceed by way of a new suit as it may be advised."